890 A.2d 771

**Shirley BROWN, Personal Representative of the Estate of Thomas Jordan Brown**

v.

**Alan H. LEGUM, Personal Representative of the Estate of Archie C. Brown, Jr.**

**No. 519, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Jan. 26, 2006.

Cynthia E. Young, Annapolis, for appellant.

Kathleen Duckett McCann (Alan H. Legum, PA, on brief), Annapolis, for appellee.

Panel JAMES R. EYLER, BARBERA and CHARLES E. MOYLAN, (Retired, specially assigned) JJ.

BARBERA, J.

This appeal involves an attempt by appellant, Shirley Brown, to record in Maryland a judgment she obtained in Colorado against the Estate of Archie Brown, after the estate had closed. Ms. Brown is the widow of Thomas Jordan Brown and Personal Representative of the Estate of Thomas Brown. Appellee is Alan H. Legum, the Personal Representative of the Estate of Archie Brown (hereafter, "the Estate"). The record does not disclose the relationship between Archie Brown and Shirley and Thomas Brown.

In December 2004, Ms. Brown filed a petition in the Circuit Court for Anne Arundel County, seeking to have the Colorado judgment recorded in Maryland. The Clerk of the court promptly recorded the judgment. Mr. Legum, as the Personal Representative of the Estate, filed a motion to strike the judgment. Ms. Brown, as the Personal Representative of the Estate of Thomas Brown, responded with a motion to "retain" the judgment, and the case proceeded to a hearing. The court later passed an order striking the foreign judgment, precipitating this appeal.

## BACKGROUND

The record does not provide a clear procedural history of the underlying Colorado lawsuit in which Ms. Brown, presumably a Colorado resident, evidently alleged that Archie Brown at one time went to Colorado and exerted undue influence upon her and her husband to obtain money from them. The record does not disclose the date upon which the Colorado suit was filed, and the parties dispute the timing of it. Ms. Brown states in her petition to transfer judgment that the Colorado case "was filed years before the death of Archie Brown." The

Estate maintains, however, that Ms. Brown filed suit against it sometime after Archie Brown's death on July 11, 2000.

The procedural background of the case is further complicated by the fact that the lawsuit that produced the Colorado judgment was not the only lawsuit filed by Ms. Brown against Archie Brown. The Record Extract contains a "Return of Service" dated February 26, 1999. The return states that Archie Brown was served on February 25, in Annapolis, Maryland, with a copy of a citation issued by the District Court, El Paso County, Colorado in Case No. 97PR92 Division W, "Shirley *Brown v. Archie Brown.*" The Colorado judgment at issue in this appeal, however, bears the case number 99CV3117, and is captioned "*Shirley Brown v. The Estate of Archie Brown.*"

Ms. Brown declares in one of her papers that "Archie Brown's attorney," by whom we surmise she means Mr. Legum, informed her Colorado attorney in September 2002, that Archie Brown had died more than two years earlier. That information evidently prompted Ms. Brown to file a claim with the Register of Wills against the Estate on December 9, 2002. A Notice of Disallowance of Claim was filed on December 12, 2002. Neither of those documents is in the record. We suspect, however, that the claim was for the same monies sought in the suit that produced the foreign judgment (and perhaps the earlier Colorado suit, as well).

The record also contains a "Motion for Entry of Default" dated May 7, 2003, filed by Colorado counsel for Ms. Brown in the Colorado suit involving the foreign judgment.[1] That paper represents the following: "A copy of the Amended Complaint was served on the attorney for Defendant's Estate on January 7, 2003, as evidenced by the court file"; "No answer has been filed"; and "Plaintiff is entitled to Entry of Default."

---

1. The paper we refer to here, and several other papers contained in the record, were submitted to the circuit court by Ms. Brown after the hearing on the Estate's motion to strike the foreign judgment. For reasons we shall explain at note 2, *infra,* the court refused to accept Ms. Brown's post-hearing submission.

By "Order of Judgment" dated July 29, 2003, the District Court, El Paso County, Colorado awarded Ms. Brown a default judgment in the amount of $60,000.00 against the Estate of Archie Brown.

### The Maryland Case

On December 4, 2003, Ms. Brown, as the Personal Representative of the Estate of Thomas Brown, filed the petition to have the Colorado judgment recorded in Maryland. A certified copy of the foreign judgment accompanied the petition. The judgment was recorded later that same day.

On December 18, 2003, Mr. Legum, as Personal Representative of the Estate, filed a "Motion to Strike Foreign Judgment." He stated several grounds in support: (1) the Estate was not properly served with the Colorado lawsuit; (2) the Colorado court did not have jurisdiction over the case because Archie Brown never lived or did business in Colorado; and (3) no claim was filed against the Estate within six months of Archie Brown's death; indeed, the only claim Ms. Brown filed against the Estate was on December 9, 2002, and was disallowed on December 12, 2002.

Ms. Brown responded with a "Motion to Retain Foreign Judgment." She alleged, *inter alia,* without supporting documentation, that Archie Brown had done business in Colorado.

On March 1, 2004, the matter came on for a hearing before the Circuit Court for Anne Arundel County. Ms. Brown appeared, *pro se,* as the Personal Representative of the Estate of Thomas Brown. Mr. Legum appeared, *pro se,* as Personal Representative of the Estate. He proffered that the Orphans' Court signed an order on November 19, 2002, approving the first and final accounting of Archie Brown's estate; no exceptions to the order were filed; and the estate was closed by the time Ms. Brown filed her claim on December 9, 2002. In response to Ms. Brown's argument that she was not timely informed of the death of Archie Brown, Mr. Legum pointed out that a proper notice to creditors was published in *The Capital* in November 2000.

As for the argument that the Colorado court lacked jurisdiction over the person of Archie Brown, Mr. Legum proffered that Archie Brown had run a trash hauling business in Anne Arundel County and had never done business outside of Maryland, much less in Colorado. With regard to the Estate's claim that it never was properly served with the Colorado lawsuit, Mr. Legum informed the court that he had a copy of the motion for default judgment that was filed in the Colorado lawsuit, showing that "service" took the form of leaving a copy of the summons, with Mr. Legum's secretary, on January 7, 2003.

For her part, Ms. Brown reasserted that Archie Brown had done business in Colorado, as evidenced by some unidentified paper. That paper may have been a "Defendant's Status Report" filed by a William Kirkland, a Colorado attorney, in the suit that produced the default judgment. Ms. Brown proffered that Archie Brown traveled to Colorado (she did not disclose when), and there he exerted undue influence upon her and her husband to obtain their life savings. He then returned to Maryland. Those facts, Ms. Brown proffered, "can be proven on paper by Archie Brown's signature." Again it is unclear from the record to what paper Ms. Brown was referring. Ms. Brown further proffered that she personally served Archie Brown with a Colorado complaint in July 2000, the month of his death. Ms. Brown, however, did not have a return of service available for the court's review at the hearing.

The hearing came to a close and the court held the matter *sub curia*. In a written order dated April 5, 2004, and entered on April 8, 2004, the court struck the Colorado judgment.[2] The court stated in the order:

---

2. After the hearing, but before the court's order, Ms. Brown sent to the court, by facsimile, a "Motion to Accept Additional Proof in Foreign Judgment." She also submitted to the court an unsigned "Amended Information." Attached to the latter were: (1) a Return of Service that was filed by James Emmert in the District Court for El Paso County, Colorado on February 26, 1999, stating that a copy of the citation in Case No. 97PR92 Division W was served on Archie Brown on February

For all of the reasons stated by [the Estate's] counsel in his written brief and through oral arguments, this Court is striking the foreign judgment against [the Estate]. This Court finds that [Archie Brown] died on July 11, 2000 and that [Ms. Brown] was required to file a claim within six months of his death. [Ms. Brown] did not file this claim until December 4, 2003. Counsel for [the Estate] proffered to the Court that proper notice of [Archie] Brown's death had been published. In addition, the Court finds that [Ms. Brown] failed to make proper service. For these reasons, the Court is granting [the Estate's] motion.

On May 7, 2004, Ms. Brown noted her appeal from that order.[3] She raises the following issue for our consideration: "Where [the Estate] presented no evidence or law to attack the validity of a foreign judgment, did the trial court err in striking the judgment?"

For the following reasons, we shall vacate the order striking the foreign judgment and remand for further proceedings.

## THE PARTIES' CONTENTIONS

Ms. Brown contends that the court erred in striking the Colorado judgment because the Estate "failed to introduce any evidence whatsoever," that the Colorado judgment was invalid under Colorado law. Ms. Brown further argues that the court failed to apply Colorado law when it analyzed the Estate's claims regarding lack of personal jurisdiction and

25; and (2) the "Defendant's Status Report." In its order, the court noted the following concerning Ms. Brown's motion to accept additional proof: "This Motion was faxed to the Court and never signed. The Court never received a mailed copy of this motion. In addition, the court received several faxes from [Ms. Brown], however, these faxes have not been considered by the Court as they were not in proper form nor were they properly served on opposing party's counsel."

3. Before noting her appeal, but more than ten days after entry of the court's judgment, Ms. Brown filed a "Motion to Reconsider Judgment." On May 21, 2004, the court denied the motion. Six days later, Ms. Brown noted a second appeal. Ms. Brown does not challenge the court's denial of the motion to reconsider.

improper service, and that, by application of Colorado law, the Estate failed to overcome the presumption of validity of the foreign judgment. Ms. Brown adds that any argument concerning her noncompliance with Maryland Code (1974, 2001 Repl.Vol., 2005 Supp.), § 8–103 of the Estates and Trusts Article ("ET") does not implicate the Colorado court's subject matter jurisdiction over her suit against the Estate. That issue, she argues, should have been raised by the Estate in Colorado as a defense to the suit there.

The Estate responds that the court correctly struck the Colorado judgment. Couching the argument for the first time on appeal as implicating the Colorado court's subject matter jurisdiction, the Estate argues that the Colorado claim did not comply with ET § 8–103, and, moreover, that Ms. Brown did not substantially comply with any of the methods of presenting a claim specified in Maryland Code (1973, 2002 Repl.Vol.), § 8–104 of the Estates and Trusts Article. The Estate also argues that it never obtained proper service of the Colorado suit.

## DISCUSSION

■ We first address Ms. Brown's contention that the Estate failed in its burden to overcome the presumption of validity of the Colorado judgment. The contention rests on the fact that the Estate made no formal offer of evidence that Colorado did not have jurisdiction and, instead, proceeded only by way of proffer. The argument comes too late. The hearing on the Estate's motion to strike the Colorado judgment did proceed by way of proffer by the parties, but neither of them objected to the procedure. Ms. Brown cannot now complain about a procedure to which she evidently acquiesced below. *See* Md. Rule 8–131(a); *Schaefer v. Cusack,* 124 Md.App. 288, 312–13, 722 A.2d 73 (1998).

We turn now to the remainder of appellant's attack upon the court's decision to strike the Colorado judgment. We begin that analysis by restating the applicable legal principles.

## Full faith and credit

■  Article IV, § 1 of the United States Constitution reads, in pertinent part, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST. art. IV, § 1. The Supreme Court has consistently held that, "in order to fulfill this constitutional mandate, 'the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which [the judgment] had in the state where it was pronounced.' " *Imperial Hotel, Inc. v. Bell Atlantic Tri–Con Leasing Corp.,* 91 Md.App. 266, 270, 603 A.2d 1371 (1992) (quoting *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Assoc.,* 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982)). Maryland law therefore treats an authenticated copy of a foreign judgment as *prima facie* evidence of the issuing court's jurisdiction, and the foreign judgment is "presumed valid until it is declared invalid by a competent court." *Imperial Hotel,* 91 Md.App. at 271–72, 603 A.2d 1371.

The full faith and credit doctrine, and the presumption of validity of a foreign judgment attendant to it, have their limitations. *See Underwriters,* 455 U.S. at 704, 102 S.Ct. 1357 ("[T]he structure of our Nation as a union of States, each possessing equal sovereign powers, dictates some basic limitations on the full-faith-and-credit principles[.]"); *accord Imperial Hotel,* 91 Md.App. at 270, 603 A.2d 1371; *Superior Court of Cal., County of Stanislaus, Family Support Division v. Ricketts,* 153 Md.App. 281, 328, 836 A.2d 707 (2003). The *Underwriters* Court explained: "Chief among those limitations is the caveat, consistently recognized by this Court, that 'a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment.' " 455 U.S. at 704, 102 S.Ct. 1357 (quoting *Durfee v. Duke,* 375 U.S. 106, 110, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)).

■ Therefore, "[i]n a suit to enforce the judgment of another state the jurisdiction of the foreign court is open to judicial inquiry." *Imperial Hotel*, 91 Md.App. at 270, 603 A.2d 1371. If the foreign court "did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Underwriters*, 455 U.S. at 705, 102 S.Ct. 1357. Consequently, "the courts of this State are not bound . . . by determinations of jurisdiction made by courts of other states" and are free to conduct an independent examination of the foreign court's ability to render the decision in question. *Imperial Hotel*, 91 Md.App. at 271–72, 603 A.2d 1371. Indeed, "[t]he power of the state of Maryland to examine into whether, under [the law of the foreign state], the court of that state which rendered the judgment had authority to do so, is beyond question." *Id.* at 272, 603 A.2d 1371. For that matter, Maryland courts are required by statute to examine whether the foreign judgment is entitled to full faith and credit under the law of Maryland. *See* Md.Code (1973, 2002 Repl.Vol.), §§ 11–801 *et seq.* of the Courts & Judicial Proceedings Article ("CJP"). That statute "places the onus on the trial judge of the 'receiving' forum to determine whether the foreign court properly exercised jurisdiction." *Imperial Hotel*, 91 Md.App. at 272, 603 A.2d 1371.

■ If, however, the foreign court's jurisdiction was raised and fully litigated in the foreign court, then principles of *res judicata* preclude reconsideration of the question in Maryland. *See id.* at 272–73, 603 A.2d 1371. The Supreme Court has made clear that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee*, 375 U.S. at 111, 84 S.Ct. 242; *see also Imperial Hotel*, 91 Md.App. at 272 n. 1, 603 A.2d 1371 ("If the issue of personal jurisdiction had been raised and fully adjudicated in [the rendering state], the doctrine of *res judicata* could have served to bar the appellants from relitigating the issue in Maryland.").

*This case*

The Estate presented to the circuit court three reasons why the Colorado judgment should be struck: the Colorado court lacked personal jurisdiction over Archie Brown; the Estate of Archie Brown was not properly served; and, in any event, Ms. Brown was not entitled to sue the Estate because she did not comply with the dictates of ET § 8–103. As we have mentioned, the Estate did not argue that the Colorado court lacked subject matter jurisdiction (although the Estate now argues that Ms. Brown's noncompliance with ET § 8–103 deprived the Colorado court of subject matter jurisdiction). The circuit court struck the judgment on two grounds: improper service of the Estate and Ms. Brown's claim was barred by ET § 8–103. We first shall address what the circuit court did decide and then address what it did not decide.

To begin, we agree with Ms. Brown that service was proper under Colorado law. Mr. Legum's secretary was served on January 7, 2003. As of July 1, 1997, Colorado law provides that personal service may be made either by serving process personally on Mr. Legum as the Personal Representative of the Estate of Archie Brown or by leaving a copy or copies of the process at Mr. Legum's usual place of business, with his secretary. *See* COLO.REV.STAT. § 13–1–125 (2005) (providing that service of process upon a defendant who is located outside the state of Colorado may be made by personally serving the summons upon the defendant or respondent outside this state, in the manner prescribed by the Colorado rules of civil procedure); COL. RULE OF PROC. 4(e)(1) (providing that personal service shall be made, *inter alia*, "by leaving a copy or copies thereof ... at the person's usual place of business, with the person's secretary, bookkeeper, manager, or chief clerk"). The circuit court should not have based its order striking the foreign judgment on the ground of improper service.

■ The circuit court also should not have based its decision to strike the foreign judgment on the ground that Ms. Brown had not presented her claim against the Estate within

six months of Archie's death, as required by ET § 8–103. The circuit court overlooked that its scope of review of the Colorado judgment was limited to whether that court had jurisdiction over the defendant and the subject matter. *Cf. Underwriters*, 455 U.S. at 705–06, 102 S.Ct. 1357 (cautioning that the court being asked to give full faith and credit to a foreign judgment may not revisit the merits of the foreign court's decision).

The circuit court did not decide whether the Colorado court had jurisdiction over the person of Archie Brown, and, because the issue was not fairly presented to it, whether the Colorado court had jurisdiction over the subject matter of the suit brought in Colorado. We addressed in *Imperial Hotel* the requirement that the Maryland court investigate those jurisdictional questions, if they have not previously been fully litigated. We held that, "where the jurisdictional challenge is unlitigated in the foreign jurisdiction[,] the Maryland statute [CJP §§ 11–801 *et seq.*] places the burden on our courts to determine entitlement [of a foreign judgment to full faith and credit in Maryland] in the first instance." *Imperial Hotel*, 91 Md.App. at 273, 603 A.2d 1371.

█ The Colorado judgment is a default judgment. Issues concerning the Colorado court's jurisdiction over the suit and the defendant, even if raised, appear not to have been fully litigated in Colorado, and, if indeed they were not, they should have been decided by the circuit court.[4] *See id.* It may well be that the circuit court considered the jurisdictional questions; yet, the court did not decide them. In any event, we think it almost impossible for the court to have decided on the

---

4. Ms. Brown alludes in her Brief of Appellant to a response filed by Colorado counsel for Archie Brown, on June 9, 2000, "contesting jurisdiction and raising limitations and competency as defenses" in an unnamed case. We suspect that the response to which she alludes was filed in 97PR92 Division W, not the suit that produced the foreign judgment. Even so, Ms. Brown acknowledges that the response is not part of the record in this case. Inasmuch as the response to which Ms. Brown refers was not before the trial judge, we cannot fairly consider it on appeal. *See Forward v. McNeily*, 148 Md.App. 290, 309, 811 A.2d 855 (2002) (stating that a document not contained in the record generally cannot be considered on appeal).

record before it, for example, whether the Colorado court had personal jurisdiction over Archie Brown, given the disputed proffers by the parties concerning his contacts with Colorado.

We concluded in *Imperial Hotel* that the circuit court's failure to consider the jurisdictional issue required a remand to that court so that it could determine whether the foreign court had jurisdiction over the defendants. 91 Md.App. at 273, 603 A.2d 1371. For the guidance of that court on remand, we pointed out that the determination of whether the foreign court had jurisdiction over the defendants involves a two-step process:

> First the trial court must determine whether the [foreign state's] statute purports to authorize the assertion of personal jurisdiction. It must be determined whether the [foreign state's] long-arm statute and rules, purport to extend to the full limits allowed by constitutional due process. And secondly, it must be determined whether the exercise of jurisdiction permitted by the statute violates the due process clause of the fourteenth amendment.
>
> With regard to the second consideration, we recognize that the basic principle of due process is that the appellants must have certain minimum contacts with [the foreign state] such that the exercise of jurisdiction over them does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The circuit court should determine whether the appellants' conduct was such that they should reasonably have anticipated being haled into court in [the foreign state]. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In making this determination the circuit court should examine the appellants' contacts with the [foreign state].

*Id.* (footnote omitted).

It is necessary to remand this case to the circuit court for it to confirm that the jurisdictional issues were not fully litigated in Colorado, and, if they were not, to decide the issues, should

they continue to be pressed by the Estate. To decide *in personam* jurisdiction, the circuit court should follow the directions laid out in *Imperial Hotel.* The court should determine, first, whether Colorado's long-arm statute, COL.REV. STAT. § 13–1–124 (2005), and the relevant rules of procedure "purport to extend to the full limits allowed by constitutional due process"; and, second, "whether the exercise of jurisdiction permitted by the statute violates [ ] due process[.]" *Imperial Hotel,* 91 Md.App. at 273–74, 603 A.2d 1371. The court's decision-making necessarily will entail a factual determination of what, if any, contacts Archie Brown had with Colorado and whether those contacts are sufficient to comport with the basic due process requirement of fair play and substantial justice. *See id.* at 274, 603 A.2d 1371.

As for whether the Colorado court had subject matter jurisdiction, the circuit court should decide that question by bearing strictly in mind the limited scope of the issue. The court should separate the jurisdictional question from the very different question of whether, assuming the foreign judgment should remain enrolled in Maryland, Ms. Brown can successfully enforce it at some future time.[5]

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

---

5. We caution the court and the parties that our disposition should not be construed as an intimation of how the jurisdictional issues should be decided.