909 A.2d 672

**Alan H. LEGUM, Personal Representative of the Estate of Archie C. Brown, Jr.**

v.

**Shirley BROWN, Personal Representative of the Estate of Thomas Jordan Brown.**

**No. 13, Sept. Term, 2006.**

Court of Appeals of Maryland.

Oct. 18, 2006.

138

Alan H. Legum (Alan Hilliard Legum, P.A., on brief), Annapolis, MD, for Petitioner.

Cynthia E. Young, Annapolis, MD, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, Judge.

The issue before us is whether, on this very sparse record, a plaintiff who recovered a money judgment against a Maryland decedent's Estate from a Colorado court is entitled to have that judgment accorded full faith and credit in Maryland. The Circuit Court for Anne Arundel County said "no." The Court of Special Appeals sent the case back for further proceedings. We shall say "yes."

In July, 2003, Shirley Brown, as personal representative of the Estate of her late husband, Thomas Brown, recovered from the District Court of El Paso, Colorado, a judgment by default for $60,000 against the Estate of Archie Brown. Archie and Thomas Brown were brothers. Archie lived and died in Maryland; Thomas lived and died in Colorado.

On December 4, 2003, Shirley filed a petition in the Circuit Court for Anne Arundel County to "transfer" the Colorado judgment. A copy of the judgment, certified by the clerk of the Colorado court, was attached to the petition. The Clerk of the Circuit Court recorded the Colorado judgment and gave notice of the recording to petitioner, Alan Legum, as personal representative of the Estate of Archie Brown.

Mr. Legum filed a motion to strike the Colorado judgment on three grounds: (1) the Estate of Archie Brown had never been properly served with process in the Colorado case; (2) because Archie was neither a resident of Colorado nor conducted business there, the Colorado court had no jurisdiction over him; and (3) no claim had been filed by Shirley in the Orphans' Court for Anne Arundel County within six months after the death of Archie. Ms. Brown, acting *pro se*, responded with a motion to "retain" the judgment, averring that the case was brought in Colorado because that is where "the injustice originated," that Archie did do business and had hired a lawyer in Colorado, that his Colorado lawyer did not inform her of Archie's death, and that the judgment was entitled to full faith and credit. After a hearing, the court entered a brief order striking the judgment. In a footnote in that order, the court stated that its order was based on "all the reasons stated by Defendant's counsel in his written brief and through oral arguments," but it found, specifically, that Ms. Brown failed to file her claim with the Estate of Archie Brown within six months of Archie's death and that she failed to make proper service on the Estate. Following a denial of her motion for reconsideration, Ms. Brown noted an appeal.

The Court of Special Appeals concluded that the Circuit Court had erred in relying on either of the two grounds noted specifically in the order. It held that there *was* proper service on Legum under Colorado law and that the relevant issue was not whether a claim against the Estate had been timely filed but only whether the Colorado court had fully litigated the question of its subject matter and personal jurisdiction and, if not, whether such jurisdiction existed. To that end, the appellate court vacated the Circuit Court's order striking the

judgment and remanded the case for the Circuit Court "to confirm that the jurisdictional issues were not fully litigated in Colorado, and, if they were not, to decide the issues, should they continue to be pressed by the Estate." *Brown v. Legum,* 166 Md.App. 401, 413–14, 890 A.2d 771, 779 (2006). We granted Mr. Legum's petition for *certiorari* and shall reverse the judgment of the Court of Special Appeals. We do not believe that any remand is necessary.

### *The Legal Setting*

Article IV, § 1 of the United States Constitution requires that full faith and credit be given in each State to the public Acts, Records, and judicial Proceedings of every other State and authorizes Congress, by law, to prescribe the manner in which such Acts, Records, and Proceedings shall be proved. Congress has exercised that authority. Title 28 U.S.C. § 1738 provides, in relevant part, that the records and judicial proceedings of a court "shall be proved or admitted in other courts within the United States ... by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form." Section 1738 continues that such judicial proceedings, "so authenticated," shall have the same full faith and credit in every court within the United States as they have by law or usage in the State where they occurred.

In its own partial implementation of the full faith and credit mandate, Maryland has adopted the Uniform Enforcement of Foreign Judgments Act, which appears in Maryland Code, §§ 11–801 through 11–807 of the Cts. & Jud. Proc. Article (CJP).[1] Section 11–802 requires that a foreign judgment over

---

1. Title 11, subtitle 8 of CJP, comprising §§ 11–801 through 11–807, deals with the enforcement of judgments entered by a court of the United States or of any other court whose judgments are entitled to full faith and credit in Maryland. Title 10, subtitle 7 of CJP, comprising §§ 10–701 through 10–709, is the Maryland Uniform Foreign Money-Judgments Recognition Act. It applies to judgments entered by courts in other *nations*—a governmental unit other than the United States or a

certain specified amounts that is "authenticated in accordance with an act of Congress *or statutes of this State* " may be filed with the clerk of the Circuit Court, and that a foreign judgment so filed "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed." (Emphasis added).

The italicized language is important. CJP § 10–204(a) provides, in relevant part, that a copy of a public record or proceeding of any agency of the government of any State shall be received in evidence "if certified as a true copy by the custodian of the record ... or proceeding...." Section 10–204(c) provides that the certification shall include "[t]he signature and title of the custodian or other person authorized to make the certification, the official seal, if any, of the office, and a statement certifying that the copy is a true copy of the public record." Unlike the Federal statute, 28 U.S.C. § 1738, CJP § 10–204 does not require that a judge certify the propriety of the clerk's attestation.

The Order of Judgment that accompanied Ms. Brown's petition contains what purports to be an original certificate by the clerk of the Colorado court that the document is "a true, and correct copy of the original in my custody" and a seal of the court, but it does not contain any certification of a judge that the clerk's attestation was in proper form. The document would thus not pass muster under § 1738. The case law makes clear, however, that the mode of authenticating State court records specified in § 1738 is not exclusive and that judicial documents from another State will be admitted into evidence and enforced in a forum State if they are attested or certified in a manner that complies with the law of the forum State. *See General Acceptance Corporation v. Holbrook,* 254 Miss. 78, 179 So.2d 845, 846 (1965); *State v. Wolfskill,* 421 S.W.2d 193, 195 (Mo.1967); *Price v. Price,* 4 Ohio App.3d 217,

State or territory of the U.S. There is some confusion in that both statutes speak of "foreign judgments." It is title 11, subtitle 8 that is relevant here.

447 N.E.2d 769, 772 (1982); *Murphy v. Murphy*, 581 P.2d 489, 492 (Okla.App.1978); *Commonwealth v. Halteman*, 192 Pa.Super. 379, 162 A.2d 251, 254 (1960); *United States v. Mathies*, 350 F.2d 963 (3rd Cir.1965); *Donald v. Jones*, 445 F.2d 601 (5th Cir.1971), *cert. denied*, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971). It is evident—and Legum has not disputed—that the copy of the judgment that accompanied Ms. Brown's petition was attested in the manner required by CJP §§ 10–204 and 11–802 and that, at least in form, it was therefore eligible for being accorded full faith and credit.

In *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the Supreme Court construed the Constitutional command of full faith and credit as a requirement that every State give the judgment of a court of another State "at least the *res judicata* effect which the judgment would be accorded in the State which rendered it." *Id.* at 109, 84 S.Ct. at 244, 11 L.Ed.2d at 190. *See also Underwriters Assur. Co. v. N.C. Guaranty Assn.*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558, 570 (1982). Consistent with that principle is the caveat, confirmed in both *Durfee* and *Underwriters*, that "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." *Durfee, supra*, 375 U.S. at 110, 84 S.Ct. at 244, 11 L.Ed.2d at 190; *Underwriters, supra*, 455 U.S. at 704, 102 S.Ct. at 1366, 71 L.Ed.2d at 570. *See also Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 386, 116 S.Ct. 873, 884, 134 L.Ed.2d 6, 25 (1996). That caveat allows the court in the forum State, when asked to give effect to the judgment of a court of another State, to "inquire into the foreign court's jurisdiction to render that judgment." *Durfee, supra*, 375 U.S. at 111, 84 S.Ct. at 245, 11 L.Ed.2d at 191. *See also Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938); *Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 160–61, 215 A.2d 812, 815 (1966), *cert. denied*, 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966); *Imperial Hotel v. Bell Atlantic*, 91 Md.App. 266, 270, 603 A.2d 1371, 1373 (1992).

██ An independent inquiry into the foreign court's jurisdiction is not automatic, however, and, when undertaken in response to a jurisdictional attack, is subject to some limitations. It has long been recognized that, when a foreign judgment is properly authenticated and it appears on the face of the judgment that the court was a court of record of general jurisdiction, "jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence or by the record itself." *Adam v. Saenger, supra,* 303 U.S. at 62, 58 S.Ct. at 456, 82 L.Ed. at 651; *Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278, 282 (1940); *Hanley v. Donoghue,* 116 U.S. 1, 6, 6 S.Ct. 242, 245, 29 L.Ed. 535, 537 (1885). *See also Mundy v. Jacques,* 116 Md. 11, 20, 81 A. 289, 292 (1911) ("While a court of one state can inquire into the jurisdiction of the court of another state, which has rendered a judgment sought to be enforced, the presumption is in favor of the jurisdiction, and, of course, an officer's return to process."). In support of that conclusion, the *Mundy* Court quoted with approval from 17 *Am. & Eng. Ency. of Law,* 1073:

> "A superior court of general jurisdiction, proceeding within the general scope of its powers, is presumed to have jurisdiction to give the judgment it renders until the contrary appears; and this presumption embraces jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. It will accordingly be presumed that all the facts necessary to give the Court jurisdiction to render the particular judgment were duly found."

*Mundy v. Jacques, supra,* 116 Md. at 20–21, 81 A. at 292. That principle was confirmed in *Coane v. Girard Trust Co.,* 182 Md. 577, 580, 35 A.2d 449, 451 (1944) ("In deference to the comity due from one state to another, we hold that an authenticated copy of the record upon which a judgment has been rendered is *prima facie* evidence of jurisdiction.").

██ It follows from that presumption, at least as a general rule, that, when a properly authenticated copy of a foreign judgment is presented for recording and enforcement, the burden is on a resisting party to establish that the rendering

court lacked either subject matter or personal jurisdiction. *See Sutton v. Leib,* 342 U.S. 402, 408, 72 S.Ct. 398, 402, 96 L.Ed. 448, 455, *reh. denied,* 343 U.S. 921, 72 S.Ct. 674, 96 L.Ed. 1334 (1952); *Cook v. Cook,* 342 U.S. 126, 128, 72 S.Ct. 157, 159, 96 L.Ed. 146, 149 (1951); *Packer Plastics, Inc. v. Laundon,* 214 Conn. 52, 570 A.2d 687, 690 (1990); *Winston v. Millaud,* 930 So.2d 144, 151 (La.App.2006); *Davis v. Davis,* 799 S.W.2d 127, 133 (Mo.App.1990); *Commercial Coin Laundry Systems v. Enneking,* 766 N.E.2d 433, 439 (Ind.App.2002); *Mitchim v. Mitchim,* 518 S.W.2d 362, 364 (Tex.1975); *Driver v. Driver,* 148 Vt. 560, 536 A.2d 557, 559, n. 1 (1987).

■ There appears to be some difference of opinion whether that rule, placing the burden of showing an absence of jurisdiction on the party resisting recognition of the foreign judgment, applies when that judgment was entered by default. Most of the courts that have considered the issue have either directly or implicitly held that the presumption of jurisdiction and placement of the burden on the party resisting recognition of the foreign judgment to prove lack of jurisdiction apply even when the foreign judgment was entered by default. *See Hansen v. Pingenot,* 739 P.2d 911 (Colo.App.1987); *L & L Wholesale, Inc. v. Gibbens,* 108 S.W.3d 74 (Mo.App.2003); *Gletzer v. Harris,* 159 S.W.3d 462 (Mo.App.2005); *Will of Kellner,* 108 Misc.2d 667, 438 N.Y.S.2d 705 (Surrog.Ct.1981); *Lust v. Fountain of Life, Inc.,* 110 N.C.App. 298, 429 S.E.2d 435 (1993); *Thompson v. Santiago,* 57 Pa. D. & C. 4th 170, 2001 WL 34047931 (2001); *Markham v. Diversified Land & Exploration Co.,* 973 S.W.2d 437 (Tex.App.1998). Courts in Georgia have held to the contrary. *See Saye v. King,* 255 Ga.App. 276, 564 S.E.2d 859 (2002).

■ We choose to follow the majority approach. The fact that a judgment is entered by default, due to a failure on the part of the defendant to appear and contest the complaint, in no way denigrates the presumption that, in entering a judgment that is regular on its face, a court of general jurisdiction acts within the scope of its subject matter jurisdiction. Nor is there any reason, if there is to be a contest as to the personal

jurisdiction of the foreign court, whether because the defendant was not subject to suit in the foreign jurisdiction or because the defendant, even if subject to suit there, was not properly served, not to place the burden on the defendant to raise that defense and provide sufficient evidentiary support to rebut the presumption. Obviously, if the person resisting registration or enforcement of the foreign judgment asserts a lack of subject matter or personal jurisdiction and offers some competent evidence to support the attack, the forum court must make an inquiry and determine from the evidence whether jurisdiction existed. It cannot give full faith and credit to the judgment based solely on the presumption of regularity once competent and persuasive evidence is presented that is facially sufficient to rebut the presumption.

There is a limitation on the scope of that inquiry, however. Supreme Court jurisprudence makes clear that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke, supra,* 375 U.S. at 111, 84 S.Ct. at 245, 11 L.Ed.2d at 191. The forum court does not relitigate that issue if it has been considered and decided by the rendering court.

### This Case

The record in this case is exceedingly sparse, as to both the underlying facts and the nature and course of the Colorado litigation. That may be because (1) the Colorado judgment was entered by default, and (2) Ms. Brown was proceeding *pro se* in the Circuit Court.

The hearing conducted by the court was on Mr. Legum's motion to strike a judgment that had already been entered by the Clerk. It was never established who had the burden of proving what. Although neither was sworn as a witness and the hearing was apparently not regarded as an evidentiary one, both Mr. Legum and Ms. Brown, without objection, presented some factual background regarding Archie and

Thomas Brown, the administration of Archie's Estate, and the Colorado litigation. Neither one produced any documents. During the hearing, Ms. Brown responded to Mr. Legum's argument that he was never served and pointed out that she had documents showing the service. Several times the court asked whether she had documentary support for her statements, and she replied that she did and could supply it. Her final statement as to that was that the Colorado court was satisfied that it had jurisdiction, "[b]ut if you are not, I will get the material for you." The court responded, "Okay. You will hear from me in writing."

Following the hearing but before the court made its ruling, Ms. Brown filed a Motion to Accept Additional Proof in Foreign Judgment, and caused to be faxed to the court by the Records Supervisor of the Colorado court a copy of the summons and return of service showing service on Legum and a status report filed with the Colorado court on December 19, 2002 by Colorado counsel for Archie Brown, stating that the defendant was deceased and "did not leave an estate whatsoever." Upon Legum's objection, however, the Circuit Court, in its final order, denied the motion and stated that the information had not been considered.

 Legum's challenge to the Colorado court's jurisdiction was focused and limited. He did not contest that the District Court of El Paso, Colorado is a court of record with general jurisdiction, and, indeed, it is. *See* Colorado Constitution, Art. VI, § 9(1) ("The district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases" except as provided in § 9(3) with respect to the city and county of Denver). *See also In re Estate of Ongaro,* 998 P.2d 1097 (Colo.2000). That is a matter of public record that we may notice on our own. *See Will of Kellner, supra,* 108 Misc.2d 667, 438 N.Y.S.2d 705 (taking notice by reference to the Constitution of the rendering State that the foreign court was one of general jurisdiction). The presumption that the Colorado court had both subject matter and personal jurisdiction therefore applies.

As we observed, Legum raised but three defenses to the Colorado judgment—that no proper service of process was ever made on the Estate of Archie Brown, that Archie Brown was never a resident of and never conducted business in Colorado, and that no claim was filed against the Estate of Archie Brown within six months after Archie Brown died, on July 11, 2000. The first two defenses attacked the personal jurisdiction of the Colorado court; the third, as conceived by Legum, went to the court's subject matter jurisdiction. The Circuit Court declared in its order that it had considered all three of those defenses, although it made findings only with respect to the first and third.

The second defense—that Archie Brown never lived or did business in Colorado—appears, even from the scant record before us, to be a red herring. The basis of the Colorado lawsuit, as described by Ms. Brown at the hearing in the Circuit Court, was that, "under undue influence Archie Brown came to Colorado and got the life savings of Thomas Brown and Shirley Brown ... and brought the money back here to Maryland, which can be proven on paper by Archie Brown's signature." She added that Thomas was terminally ill at the time. The action, by Thomas's widow and personal representative, was thus a tort-based action founded on conduct committed by Archie in Colorado. The Colorado long-arm statute, C.R.S.A. § 13–1–124, provides jurisdiction over any person concerning any cause of action *arising from* "[t]he commission of a tortious act within this state" or "[t]he transaction of any business within this state." The extension of jurisdiction in those circumstances is commonly provided for in long-arm statutes (*see* Maryland Code, § 6–103 of the Cts. & Jud. Proc. Article) and ordinarily does not offend due process.[2] Consequently, whether Archie Brown ever resided in Colorado or regularly did business there is irrelevant.

The Court of Special Appeals correctly held that service of process was properly made on Mr. Legum, as personal repre-

---

2. A State court's exercise of personal jurisdiction over a non-resident comports with due process if the defendant has "minimum contacts"

sentative of the Estate of Archie Brown, in accordance with Colorado law. Mr. Legum acknowledged at the hearing that a private process server left a copy of the process from the Colorado court with his secretary, in his law office, in January, 2003. He apparently did not respond, and a default judgment was entered in Colorado. Legum said that he had been given a copy of the motion for default judgment, which indicated that an individual named Marvin Parker left the papers with Legum's secretary. He never denied that he received the papers from his secretary promptly upon their service on her.

As the intermediate appellate court pointed out, Colorado law, C.R.S.A. § 13–1–125(1), permits service of process to be made upon any person subject to the jurisdiction of a Colorado court by personally serving the summons on the defendant outside the State in the manner prescribed by the Colorado rules of civil procedure. Colorado Rule of Civil Procedure 4(e) permits personal service to be made upon a natural person eighteen years or older by delivering a copy to the person or leaving it "at the person's usual workplace, with the person's secretary...." Service of the papers on Mr. Legum's secretary at his law office was in full compliance with Colorado law.

___

with the State such that requiring the defendant to defend its interests in the State "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Satisfaction of that standard may depend on whether the defendant's contacts with the forum State form the basis of the lawsuit. If they do, they may establish "specific jurisdiction," as opposed to "general jurisdiction," which requires a more continuous and systematic contact. The bases relied upon here go to specific jurisdiction, in that the Colorado lawsuit emanates directly from contacts that Archie Brown allegedly had with his brother in Colorado. In determining whether specific jurisdiction exists, the court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs.,* 334 F.3d 390, 397 (4th Cir.2003); *Beyond v. Realtime,* 388 Md. 1, 26, 878 A.2d 567, 582 (2005). Traveling to Colorado and there using undue influence to cause a disabled and terminally ill brother to turn over a substantial portion of his assets to the defendant satisfies that test.

The Circuit Court thus erred in striking the judgment on that ground.

Maryland Code, § 8–103 of the Estates & Trusts Article (ET) provides, with exceptions not relevant here, that a claim against a decedent's Estate, whether founded on contract, tort, or other legal basis, is "forever barred against the estate, the personal representative, and the heirs and legatees," unless presented to the personal representative or the Register of Wills within the earlier of six months after the decedent's death or two months after a notice is mailed to the creditor by the personal representative.

Archie Brown died on July 11, 2000. At some point, not clear from the record, an Estate was opened, and, in November, 2000, a notice to creditors was published. In October, 2002, a first and final administration account was filed in the Orphans' Court for Anne Arundel County. A month later, the account was approved, and the Estate was closed. It appears that the Colorado lawsuit was filed prior to Archie's death. The default judgment was not entered until July 29, 2003, however, and the petition to "transfer" that judgment—to record it in Maryland—was filed in December, 2003. Clearly, no claim was filed by Ms. Brown in Archie Brown's Estate within the six months allowed by ET § 8–103, and thus, under that statute, a claim would be "forever barred." The Circuit Court found that as a basis for declaring that the Colorado court was without jurisdiction—presumably subject matter jurisdiction—to enter the July, 2003 judgment against the Estate.

The failure of Ms. Brown to have filed a timely claim against Archie Brown's Estate, if brought to the attention of the Colorado court, may well have required a verdict for the Estate. Compliance with ET § 8–103 is part of the right to make a claim, and not merely a statute of limitations, although non-compliance may be waived by the personal representative. *See Kann v. Kann*, 344 Md. 689, 714–15, 690 A.2d 509, 521 (1997). Thus, subject to any claim of waiver, Ms. Brown's non-compliance with the statute would have been a facially valid defense that could have been raised in the Colorado

action. In conformance with decisions in Colorado, Kansas, and Maine, however, we conclude that failure to comply with ET § 8–103 is not a jurisdictional defense; it does not deprive a court of jurisdiction to consider and resolve a late-filed claim.

The jurisdictional issue raised by Legum was put to rest in *Estate of Ongaro, supra*, 998 P.2d 1097. In that case, a creditor filed a claim against an Estate after the period allowed by the Colorado non-claim statute had run. The claim was rejected, first by the personal representative and then by the probate court. That ruling was ultimately affirmed by the Colorado Supreme Court, but, in reaching its decision, the Supreme Court considered and rejected the Estate's argument that the trial court had no jurisdiction even to entertain the late-filed claim.

The court noted that Art. VI, § 9 of the Colorado Constitution gave the district courts of that State original jurisdiction in all civil and probate cases. Although in three earlier cases—*Estate of Randall*, 166 Colo. 1, 441 P.2d 153, 155 (1968), *Matter of Estate of Daigle*, 634 P.2d 71, 77 (Colo.1981), and *Sommermeyer v. Price*, 198 Colo. 548, 603 P.2d 135, 138 (1979)—the court had declared that a non-claim statute created a jurisdictional bar to consideration of a late-filed claim, the *Ongaro* court held that, while the results reached in those cases were appropriate, the "conclusory statements" regarding jurisdiction were without "any sound legal basis," and that "the nonclaim statute does not deprive courts of jurisdiction over untimely claims." *Ongaro*, 998 P.2d at 1103–04. Just as this Court has consistently done in recent times (*see County Commissioners v. Carroll Craft*, 384 Md. 23, 44–45, 862 A.2d 404, 417 (2004)), the Colorado court looked at jurisdiction as the power of a court to entertain and render a judgment rather than the propriety of how that power is exercised.

Although *Ongaro* constitutes a clear and binding rejection of Legum's argument that the Colorado district court was without jurisdiction to consider Ms. Brown's claim, we note that other courts have also reached similar conclusions. *See In the Matter of the Estate of Francis J. Wolf*, 32 Kan.App.2d 1247,

96 P.3d 1110 (2004), *judgment aff'd,* 279 Kan. 718, 112 P.3d 94 (2005); *Estate of Abraham Shapiro,* 723 A.2d 886 (Me.1999).

We part company with the Court of Special Appeals only with respect to the remedy. As we have observed, Legum, as the party resisting recognition of the Colorado judgment, bore the burden of presenting evidence sufficient to overcome the presumption that the Colorado court had subject matter and personal jurisdiction. He attacked the court's jurisdiction on only three grounds, and we have found each of those grounds to be lacking in substance. The Circuit Court need make no further inquiry.

**JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIR-CUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND CASE TO THAT COURT WITH INSTRUC-TIONS TO DENY MOTION OF PETITIONER TO STRIKE COLORADO JUDGMENT. COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**