Steven J. **CHARIA**, Plaintiff-Appellant,

v.

**CIGARETTE RACING TEAM, INC.,**
Defendant-Appellee.

No. 76–4199.

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1978.

Santo A. Dileo, New Orleans, La., for plaintiff-appellant.

William E. Wright, Jr., New Orleans, La., for defendant-appellee.

Before RONEY, TJOFLAT and HILL, Circuit Judges.

RONEY, Circuit Judge:

In this Louisiana diversity case, involving the purchase of a boat by a Louisiana resident from a Florida boatbuilder, the issue on appeal is whether the district court erred in dismissing the complaint on the ground there were insufficient "minimum contacts" to justify personal jurisdiction over the Florida boatbuilder under the Louisiana long-arm statute. The facts and contacts in the present case are almost identical to those in *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973), where we denied Louisiana jurisdiction over a Washington boatbuilder. In *Benjamin* the "contacts" with Louisiana were the sale of the boat to a Louisiana resident, telephone and mail negotiations between the defendant in Washington and the plaintiff in Louisiana, national advertising, receipt of plaintiff's checks drawn on a Louisiana bank, and the fact that even though plaintiff received the boat in Washington, defendant knew the ship would be home-ported in Louisiana. In the present case there are three alleged "contacts" in addition to those paralleling *Benjamin* : defendant arranged to ship the boat to defendant in Louisiana via a common carrier, FOB Florida; defendant sold three other boats to Louisiana residents; and plaintiff alleges a personal injury in addition to his contract claim. Holding these additional contacts insufficient to bring about a result different from *Benjamin,* we affirm the district court's holding that it lacked *in personam* jurisdiction over defendant Cigarette Racing Team.

Although jurisdiction is asserted under the state long arm statute, here La.Rev. Stat.Ann. § 13:3201 (West 1968 & Supp. 1978),[1] as in *Benjamin,* we go immediately to a consideration of this case in light of the permissible limits of due process in the exercise of *in personam* jurisdiction.[2]

---

1. § 3201. *Personal jurisdiction over nonresidents*

   A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
   (a) transacting any business in this state;
   (b) contracting to supply services or things in this state;
   (c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
   (d) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
   (e) Having an interest in, using or possessing a real right or immovable property in this state; or
   (f) Non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.

2. [W]e posit this decision on the failure of the exercise of *in personam* jurisdiction to meet the due process standard required by the United States Constitution. Our decision would appear to violate the usually sound practice of refusing to reach constitutional questions if a case can be decided on nonconstitutional grounds. *See, e. g., Burton v.*

In the constitutional analysis, the Supreme Court in a trilogy of cases, *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), has established that due process requires only that defendant have sufficient "minimum contacts" with the forum state to permit the suit to be maintained without offending traditional notions of fair play and substantial justice. While the law has evolved to allow a state to exercise jurisdiction over defendants who have increasingly tenuous contacts with the forum state, in this Circuit *some* interconnection between the defendant and the forum state is still required. Since cases of this kind must be judged on their facts, and the court is bound by the precedent of prior opinions, a comparison of the facts of the present case with the facts and holding in *Benjamin* is appropriate.

### Charia Facts

Plaintiff Steven Charia, a resident of New Orleans, Louisiana, saw advertisements which defendant, Cigarette Racing Team, Inc., a Florida boatbuilding corporation, had placed in several national boating magazines. After speaking to other Louisiana residents who had purchased Cigarette boats, plaintiff wrote from Louisiana to Cigarette in Florida, seeking further information. Cigarette replied that the boat could be delivered six weeks after an order was placed, and that a deposit of $3,000 was required, with "the balance due upon completion of the boat F.O.B. factory here in Miami." Along with the reply, Cigarette sent Charia literature about its boats. Subsequently, several telephone conversations took place, some of which were initiated by Cigarette, others by Charia.

While on a business trip to Miami, Florida, Charia visited the Cigarette plant, discussed the boat further with defendant, and verbally agreed to purchase a 28-foot Cigarette boat. He gave Cigarette a check, drawn on a Louisiana bank, for $3,000, the downpayment. No written contract was ever signed by the parties.

Charia returned to Louisiana and had additional telephone conversations with Cigarette about such details as the options to be placed in the boat. He was informed by telephone that the boat was ready and traveled to Florida to check on the boat, only to find out that they were still having some mechanical problems with it. Charia returned to New Orleans. He was notified by telephone a second time that the boat was ready, but when he again traveled to Florida to inspect it, some additional problems were discovered, and he returned home to Louisiana. Several days later, Cigarette notified plaintiff that the problems had been corrected and that the boat was ready and would be delivered as soon as Charia paid the balance due on it. Charia sent Cigarette a check drawn on his Louisiana bank.

Delivery of the boat was then arranged by Cigarette. The boat was shipped FOB Miami, Florida, as the parties had agreed, with the approximately $500 transportation cost of sixty cents per mile added to the cost of the boat. Cigarette arranged for an independent private carrier to take the boat from Florida to Louisiana.

Soon after he received the boat, Charia experienced problems with the boat, and complained to Cigarette of various alleged defects. He wrote numerous letters and telephoned Cigarette for almost a year in an effort to resolve the problems. When

*United States,* 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905); *Texas v. Grundstrom,* 404 F.2d 644 (5th Cir. 1968). But we find our approach to be the better part of discretion here because it is unclear whether the Louisiana statute was intended to go to the permissible limits of due process in the exercise of *in personam* jurisdiction in contract cases,

and we think that good federalism requires us to refrain from making law for Louisiana in this regard. Moreover, the case can be disposed of readily on the constitutional ground, on the authority of existing decisions, without creating any new constitutional law. (footnote omitted).

*Benjamin, supra,* 472 F.2d at 725.

Charia realized that Cigarette would do no more, he brought suit against Cigarette.[3] The suit sounded in redhibition under Louisiana law, which is a contract action to set aside a sale because of defects in the thing sold. *See* La.Civ.Code Ann. art. 2520 (West 1952). His complaint incidentally sought damages for personal injury caused by one of the boat's defects. The district court dismissed for lack of *in personam* jurisdiction over defendant.

In sum, Cigarette is a Florida corporation which is not qualified to do business in Louisiana and which does not have any office, place of business, employees or agents in Louisiana. Its contacts with Louisiana have been through this sale to Charia and similar sales to three other Louisiana residents. These, then, would have to supply the "minimum contacts" required by constitutional due process.

### Benjamin Facts

*Benjamin, supra,* was also a Louisiana diversity contract case brought by a Louisiana resident (Benjamin) against an out-of-state shipbuilder (Western Boat, a Washington corporation). All negotiations were carried on by mail and telephone. Western Boat sent Benjamin a written contract, which Benjamin signed and returned to Western Boat. Western Boat then signed it in Washington, completing the contract. Benjamin paid for the boat with several checks drawn on a Louisiana bank. When the boat was completed, Benjamin went to Washington to accept the boat and take delivery of it. He then sailed it to San Francisco, from where he shipped it to Louisiana. Western knew the boat's home-port would be in Louisiana.

The Court made clear that these were Western Boat's sole contacts with Louisiana:

[I]t is necessary to understand that these factors constitute the entire sum of West-

ern Boat's contacts with Louisiana. Western Boat (1) is a corporation organized under the laws of Washington, (2) is not qualified to do business in Louisiana, (3) has neither incurred nor paid taxes to Louisiana, (4) has not appointed an agent for service of process in Louisiana, (5) has no office, no place of business, no officers, no agents, no employees, no salesmen, no licensees, no franchisees, and no distributors in Louisiana, (6) has no independent dealers in Louisiana, (7) has no assets in Louisiana, (8) has never advertised in local Louisiana media and is not listed in any Louisiana telephone directories, (9) has never delivered, or arranged to be delivered, a vessel of any kind in Louisiana, (10) has never made a sale to a resident of Louisiana, other than the sale to Benjamin, and (11) has never sent representatives, inspectors, or repair or service personnel to Louisiana. Therefore, Western Boat's Louisiana contacts are limited solely to those contacts generated in the course of the transaction with Benjamin.

*Benjamin, supra,* 472 F.2d at 729.

### The Similarity

It is at once obvious that the facts in the case *sub judice* closely parallel those involved in *Benjamin.* Charia wrote to Cigarette after he saw Cigarette's advertisements in various national boating magazines. Advertisements were also at issue in *Benjamin,* where we held that "merely advertising in magazines of national circulation that are read in the forum state is not a significant contact for jurisdictional purposes." *Benjamin, supra,* 472 F.2d at 731.

The preliminary negotiations and communications after Charia agreed to buy the boat and before it was delivered were conducted via the mails and long distance telephone calls. While most of these communications were initiated by Charia, the record clearly shows that at least one letter was

---

**3.** Actually, plaintiff brought two identical suits, in Louisiana state court and in the United States District Court for the Eastern District of Louisiana. Cigarette removed the state suit to federal court, where the two suits were then consolidated. Cigarette then filed a motion to dismiss for lack of *in personam* jurisdiction over it, which the district court granted, and Charia brought this appeal.

sent and some telephone calls were made to Louisiana by Cigarette. The same had occurred in *Benjamin*, where the written contract was also sent into Louisiana by mail. We stated that "this series of letters and exchange of the contract cannot be characterized as purposeful activity invoking the benefits and protections of Louisiana's law." *Benjamin, supra*, 472 F.2d at 729.

In the present case, as in *Benjamin*, plaintiff paid defendant for the boat with checks drawn on Louisiana banks.

In *Benjamin*, the contract was completed outside Louisiana, and the Court also found that the locus of the contract was outside Louisiana. Charia contends that his contract with Cigarette was completed in Louisiana when he mailed the balance due to Cigarette. It is more likely that the contract was completed when Cigarette received the money in Florida, or perhaps even earlier, when Charia paid the $3,000 down payment in Florida. In any event, we need not resolve this question. The place of completion of the contract, which is often fortuitous, is not controlling. *See, e. g., Vencedor Mfg. Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 890 (1st Cir. 1977); *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1065 (2d Cir. 1974). What is more important is that the only face-to-face discussions about the sale occurred in Florida during Charia's visits to Cigarette's plant. In *Benjamin* the locus of the contract was outside Louisiana, and here the locus of the contract was in Florida, where Cigarette's activity, the building of the boat, was to take place.

### The Difference

The outcome of this case then depends upon whether three factual differences between *Benjamin* and the case *sub judice* call for a different result. Two differences arise in the ninth and tenth factors on the *Benjamin* list. In the present case, (9) Cigarette did "arrange" for the boat to be delivered to Louisiana by a private contractor, FOB Florida, and (10) Cigarette made three additional sales to Louisiana residents. The third difference is found in the fact that Charia has raised a tort claim subsidiary to his contract claim.

### 1. The Tort Claim

Plaintiff's complaint alleged that he received an unspecified personal injury from a defective racing seat in the boat. It is clear, however, that the main thrust of plaintiff's complaint is a contract claim (for redhibition) and not a tort claim. At oral argument, Charia's attorney admitted that the tort allegation is independent and cannot help plaintiff get jurisdiction over the contract claim. Since plaintiff admits that the main thrust of his complaint is a contract action, we do not believe that the passing reference in the complaint to some minor injury makes this case differ from *Benjamin*. The cases involving tort claims are thus inapposite to the result here.

### 2. Shipment to Louisiana "FOB Miami, Florida"

Benjamin personally picked up his boat in Washington. Here, Cigarette arranged for the boat to be shipped FOB Florida to Charia in Louisiana. Charia contends that the FOB shipment establishes a contact with Louisiana, absent in *Benjamin*, by which Cigarette invoked the benefits and protections of Louisiana law.

Shipment "FOB Florida" simply means that title to the goods and the risk of their loss passed to Charia in Florida, and Charia bore the cost of shipping from Florida to Louisiana. Fla.Stat.Ann. § 672.2–319(1) (West 1966); *Vencedor Mfg. Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 890 (1st Cir. 1977); *Georgia-Pacific Corp. v. WHDH Corp.*, 374 F.Supp. 1076, 1079 (D.Me.1974). Although Cigarette, rather than Charia, made the arrangements with an independent carrier for the actual physical shipment of the goods into Louisiana, neither Cigarette nor any of its employees ever physically set foot in Louisiana.

The suggested significance of the FOB shipment is that, under a "stream of commerce" rationale, Cigarette was indirectly shipping its product into Louisiana and could reasonably have foreseen that the sale would have effects in Louisiana, thus legi-

timizing Louisiana's exercise of long-arm jurisdiction. We conclude, on the contrary, that Cigarette's shipment of the boat "FOB Miami" is no different than if Charia had picked up the boat himself outside of Louisiana, as Benjamin had. Cigarette knew the boat was destined for Louisiana, but so did Western Boat in *Benjamin*. In both cases, title passed to plaintiff outside Louisiana, and the risk of loss while the goods were being shipped to Louisiana was, in both cases, on plaintiff. In neither case did the out-of-state defendant intentionally avail itself of the benefits of Louisiana law. Thus, the fact that Cigarette sent the boat to Charia FOB Miami does not by itself cause a different result than in *Benjamin*.

Two district courts within this Circuit have reached a similar conclusion. In those cases, defendants' *only* contact with the forum was that they shipped goods into the forum FOB a point outside the forum. The courts held that the FOB shipment was insufficient to allow them to exercise jurisdiction over the defendant. In *Harris v. North American Rockwell Corp.*, 372 F.Supp. 958 (N.D.Ga.1974), an Ohio corporation, Bock, manufactured drills which it sold to a Georgia distributor, delivery FOB Bock's plant in Ohio. Bock had never qualified to do business in Georgia, never sent agents or employees there, and its only Georgia sales were to this Georgia distributor. The court held that it lacked jurisdiction over Bock, since Bock's only duty under its contract was to produce the drills in Ohio for delivery in Ohio.[4]

Similarly, in *R. Clinton Construction Co. v. Bryant & Reaves, Inc.*, 442 F.Supp. 838 (N.D.Miss.1977), defendant received in Tennessee a single telephone call from a Mississippi customer, pursuant to which he caused goods to be shipped by common carrier into Mississippi FOB Tennessee. Defendant had no other contacts with Mississippi. The court held that defendant had waived its objections to the court's lack of *in personam* jurisdiction, but in dicta stated that these

contacts would not provide sufficient contacts with Mississippi to satisfy due process. Significantly, the court compared the situation before it to *Benjamin*, noting that "[m]ost assuredly, [defendant's] contact with Mississippi was no greater than that of Western Boat with Louisiana." 442 F.Supp. at 850.

### 3. *Additional Sales to Louisiana Residents*

In *Benjamin* we declined to apply the "stream of commerce" theory on the ground that only an "isolated sale was involved." 472 F.2d at 730. Here, on the other hand, Cigarette made three additional sales to Louisiana residents. In the five-year period of 1971–1975, Cigarette sold four boats to Louisiana residents, one of which was to Charia. It received $85,000 from these other Louisiana residents, in addition to $30,000 from the sale to Charia. As with the sale to Charia, these other three boats were shipped FOB Miami, Florida and there is no evidence that any employee of Cigarette was ever present in Louisiana.

This is not a case where defendant had supplied its product to the forum state in large quantities over a lengthy period of time. *See Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315 (5th Cir. 1970). Rather, Cigarette sold four boats in Louisiana in a 5-year period, sales which we consider, in the circumstances of this case, to be isolated and sporadic. Cigarette's isolated sales did not involve purposeful conduct within Louisiana so as to avail itself of the benefits and protections of Louisiana's laws. *See Fowler Products Co. v. Coca-Cola Bottling Co.*, 413 F.Supp. 1339 (M.D.Ga.1976). Thus, Cigarette's four sporadic and isolated sales do not furnish a sufficient difference to hold *Benjamin* not controlling of this case.

### The Decision

Having examined the possible distinctions from *Benjamin*, we find that the facts in this case are sufficiently close to those in

---

4. *See also Interstate Paper Corp. v. Air-O-Flex Equip. Co.*, 426 F.Supp. 1323, 1327 (S.D.Ga. 1977).

*Benjamin* so that the latter controls. The district court correctly dismissed this suit for lack of *in personam* jurisdiction over defendant Cigarette.

AFFIRMED.