hKOSTELKA, J.
In this suit for breach of contract, Terri Hagan and Judy Brainis (collectively referred to as “Hagan”), appeal the trial court judgment granting an exception of lack of personal jurisdiction in favor of *103 defendant, Deborah Stone (“Stone”). We reverse and remand for further proceedings.
Facts
Stone is the owner and operator of Advantage, a computer training business in Jackson, Mississippi. Seeking assistance to open a similar business in Louisiana, Hagan contacted Stone. Although Stone expressed no interest in becoming a partner, she agreed to sell Hagan her training materials conditioned upon attendance at some of her training courses. On May 4, 1994, in furtherance of that understanding, Stone entered into a written contract with Hagan in Jackson, Mississippi. The contract maintained the independent status of the two businesses, although it gave Ha-gan the right to use the name Advantage. The provisions also gave Hagan permission to purchase original student instruction modules and supporting data files for the sum of $200 per module, use course descriptions and other promotional materials produced by Stone for sales and advertising, receive updates on previously purchased manuals, and the privilege to send employees to Jackson for free training classes and to reproduce instruction manuals. In consideration for the above rights and privileges, the contract provided that:
[P]urehasers agree to pay to seller 5% (five percent) of gross sales attributable to computer training activities marketed as Advantage and supported by seller at the end of each calendar quarter on a timely basis for a period of five years commencing on the date this agreement is accepted by all parties. It is further agreed that the purchasers shall acquire and be provided with 100 hours of computer training to be completed within 90 days of the execution of this agreement. This shall be provided at a total cost not to exceed $5,000 (five thousand dollars).
The agreement also contained a provision for enforcement of the contract under the laws of Mississippi.
pHagan paid Stone the $5,000 training fee in addition to $21,000 in quarterly payments representing 5% of gross sales from the contract date until April of 1997, when Hagan ceased doing business as Advantage.
When unresolved disputes arose as to the quality of the manuals, this suit ensued. Stone filed a declinatory exception of lack of personal jurisdiction, alleging insufficient minimum contacts with the state of Louisiana. After a hearing on the exception, the trial court ruled in Stone’s favor. The court found the exercise of Louisiana’s personal jurisdiction unwarranted because Stone had not purposefully directed any activities toward Louisiana, was sought out by Hagan to use her “company’s name and trademark in the commencement and operation of their own business -”, and had “specifically refused the protections of Louisiana law by agreeing to have the contract governed by the laws of Mississippi.” Persuasive to the decision was the parties’ agreement to conduct all of Hagan’s training in Mississippi and the court’s belief that Stone’s two visits to Hagan’s business resulted in “merely recommendations” which were insufficient for the necessary minimum contacts.
Discussion

Minimum, Contacts

Due process requires that in order to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Ruckstuhl v. Owens Corning Fiberglass Corporation, 98-1126 (La.04/13/99), 731 So.2d 881.
Louisiana’s Long-arm Statute, La. R.S. 13:3201, provides for personal jurisdiction over nonresidents to the fullest extent allowed by the United States Constitution. Ruckstuhl, supra. In pertinent part those provisions read:
*104 | o A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
[[Image here]]
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
The due process test has evolved into a two-part test, the first being the minimum contacts prong, which is satisfied by a single act or actions by which the defendant “purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Ruckstuhl, supra, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The nonresident’s “purposeful availment” must be such that the defendant “should reasonably anticipate being haled into court” in the forum state. Id. citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The second part of the due process test centers around the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, “a presumption of reasonableness of jurisdiction arises” and “the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum.” Id. citing de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 107 (La.1991).
With respect to interstate contractual obligations, the parties who reach out beyond one state and create continuing relationships and obligations with citizens |4of another state are subject to regulation and sanctions in the other state for the consequences of their activities. The extent to which a contract can constitute a contact for the purposes of due process depends upon prior negotiations, contemplated future consequences, terms of the contract and the parties’ actual course of dealing. Burger King Corp., supra.
Based upon Stone’s activities in carrying out the contractual provisions and the long-term economic relationship created by the contract, we find Stone should have reasonably anticipated being haled into a Louisiana court.
Even despite the fact that the contract was executed in Mississippi, Stone knowingly negotiated and entered into an agreement with two Louisiana businesswomen. Moreover, she was aware that the products she sold to Hagan, and the services for which she trained them, would be utilized in this forum. In fulfillment of agreement terms, Stone communicated frequently with Hagan, sometimes by her own initiation, from 1994 through early 1997, via phone, mail, fax, and courier service. She traveled to Hagan’s facilities on two occasions. For the second meeting, referred to as “1st Quarterly Pow Wow,” Stone prepared an agenda and discussed with and advised Hagan regarding the contract terms, i.e., the quality of the manuals and the quarterly fee, as well as marketing and hiring strategies and other business-related issues. On that visit, Stone was accompanied by a paid employee. The record shows that Stone also purchased one or two of Hagan’s manuals, and jointly with Hagan bought mouse pads and manual covers from a local Louisiana printing company.
*105 Relevant also are the contract terms. Stone received an initial $5,000 fee for training services, drawn on a Louisiana bank. Although all training took place in Mississippi, Stone was aware that the actual service resulting from that training would not only take place in Louisiana but would be provided to Louisiana residents. From those circumstances, Stone could have realized the potential for a | Ssuit outside of Mississippi. Burger King Corp., supra.
Moreover, even despite the fact that Stone provided products solely to Hagan, the record shows that Hagan purchased approximately fourteen training modules. The agreement also contained an unrestricted provision for updated materials. In fact, Stone testified that they had the right to those updates “[fjorever.” Accordingly, the contract contemplated that Stone would continue to supply updates to products in the Louisiana market for at least a five-year period, and beyond. It is not inconceivable to assume that the software updates would precipitate the need for further training. These continued and long-term contacts are more than isolated or sporadic. Compare Charia v. Cigarette Racing Team, Inc., 583 F.2d 184 (5th Cir.1978); Benjamin v. Western Boat Building Corp., 472 F.2d 723 (5th Cir.1973), cert denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973).
Most persuasive to our determination, however, are the financial terms of the agreement. Despite the independent nature of the two enterprises, the contract clearly contemplated that Stone would share a five-year, five percent portion of Hagan’s gross sales attributable to Advantage and supported by Stone. Based upon this condition, Stone received approximately $21,000 in quarterly payments, drawn on Louisiana checking accounts, through early 1997. Although Stone classified the provision as representing delayed payments for the products she provided, there was no set amount or fee cap included in the 5% fee provision. Moreover, the contract required an up-front $200 payment for each training module. These facts show that Stone knowingly agreed' to receive a long-term share of Hagan’s profits, an appreciable benefit derived from her affiliation with the Louisiana corporation. We cannot find such activities to have been “fortuitous” or “attenuated,” but rather a “reaching] out” beyond Mississippi through the creation of a continuing economic relationship with Louisiana citizens | ¡¡sufficient to show that Stone “purposefully availed” [herself] of the benefits and protections of Louisiana’s laws. Burger King Corp., supra.
When viewed in their entirety, Stone’s actions qualify both as the transacting of business and contracting to supply services or things in this state contemplated by La. R.S. 13:3201.
We are mindful and have considered the lack of pre-negotiation contacts by Stone in Louisiana, (Stone’s business is located and operated in Mississippi; she had no business office or agent for service of process, employees, representatives or property in Louisiana; did not advertise here; had no other Louisiana business contacts; and, the initial solicitation of Stone’s business by Hagan), which separately, may have been insufficient to rise to the level of minimum contacts. Charia, supra; Benjamin, supra. We have also considered the choice of law provision which is a relevant factor in the jurisdictional analysis. Burger King Corp., supra. Nevertheless, in the ultimate determination, we find that these factors are outweighed by the post-contract actions of Stone, the future consequences contemplated by the agreement and the contract terms as set forth above.'

Fairness

Because we have concluded that Stone purposefully established minimum contacts with Louisiana, a presumption arises that this jurisdiction is reasonable and the burden of proof shifts to Stone to present a “compelling case that the presence of some other considerations would *106 render jurisdiction unreasonable,” or that the exercise of jurisdiction over Stone will offend “traditional notions of fair play and substantial justice.” International Shoe Co., supra; de Reyes, supra. In determining this fundamental fairness issue, we must examine (1) the defendant’s burden; (2) the forum state’s interest; (3) the plaintiffs interest in convenient and effective relief; (4) the judicial system’s interest in efficient resolution of 1 controversies; and (5) the state’s shared interest in furthering fundamental social policies. Ruckstuhl, supra. Proof sufficient to overcome the presumption must be by persuasive evidence, de Reyes, 586 So.2d at 111.
After weighing the evidence presented, we conclude that Stone has failed to defeat the presumption. Stone’s burden in traveling from Jackson, Mississippi to Shreveport, Louisiana is minimal considering the relative close distance between the two cities and the interstate system which connects them. Moreover, air travel is a convenient and inexpensive option. The same would hold true for any other Mississippi witnesses who might be called to testify here. Louisiana has an obvious interest in litigating an action involving services performed for and by its citizens. Likewise, because the business is located in Louisiana, presumably most necessary documentation and the majority of witnesses are located here. Moreover, considering both the factual nature of this dispute and the generally uniform and uncomplicated nature of breach of contract law, we remain unpersuaded that the parties’ choice of Mississippi law for the resolution of this dispute is sufficient to outweigh Louisiana’s interest in the uniform and efficient resolution of this case involving two of its citizens and one local business. Finally, because in Louisiana it is acceptable for contracting parties to make a choice of state law which will govern the agreement between them to the extent that law does not contravene Louisiana’s public policy, the burden of obtaining counsel will be relatively equal for either party in this case, i.e., either party will be forced to find Mississippi counsel licensed in Louisiana or Louisiana counsel learned in Mississippi law. Under these circumstances, we find that the interests of the state and Hagan adequately counterbalance any slight inconvenience that Stone may experience in defending the suit in this forum.
Accordingly, we find that fundamental fairness supports the exercise of jurisdiction by the Louisiana court and “enhances the mild yet preponderant |Rshowing of minimum contacts.” American Valve Mfg. Co. v. Valve Industira Ing Rizzio, 28,942 (La.App.2d Cir.12/11/96), 685 So.2d 1156, review denied, 97-0120 (La.03/07/97), 689 So.2d 1378.[1]

Conclusion

In light of the foregoing, we reverse the judgment of the trial court granting the declinatory exception of lack of personal jurisdiction at Stone’s costs and remand to the trial court for further proceedings in accordance with this opinion.
JUDGMENT REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, STEWART, CARAWAY, KOSTELKA, JJ.
Rehearing denied.

. In light of our ruling, we pretermit discussion of any remaining claims.