6 A.3d 315

**Melvyn LIEBERMAN, et al.**

v.

**MAYAVISION, INC.**

**No. 2754, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Oct. 1, 2010.

266

Richard I. Chaifetz, Columbia, MD, for appellant.

Chandni Kumar (Greenberg, Felsen & Sargent, LLC, on the brief) Rockville, MD, for appellee.

Panel: *DAVIS, WRIGHT, GRAEFF, JJ.

GRAEFF, J.

On May 23, 2008, a Louisiana court entered a default judgment in the amount of $313,552 against appellants, Melvyn Lieberman and Lieberman & Walisko, in favor of appellee, Mayavision, Inc. ("Mayavision"), a Spanish language tele-

---

* Arrie W. Davis, J., participated in the hearing and conference of this case while an active member of this court; he participated in the adoption of this opinion as a specially assigned member of this Court.

vision station. On July 29, 2008, Mayavision recorded the foreign judgment in the Circuit Court for Montgomery County. On December 19, 2008, appellants moved to vacate the foreign judgment, arguing that the Louisiana court lacked personal jurisdiction over them. The circuit court denied appellants' motion.

Appellants noted an appeal and present two questions for our review, which we have rephrased slightly:

1. Did the circuit court err in denying appellants' motion to vacate the entry of the foreign judgment?

2. Did the circuit court err when it failed to conduct an evidentiary hearing to determine whether appellants had minimum contacts with Louisiana?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Lieberman, a Maryland resident and a licensed engineer, owns Lieberman & Walisko, a consulting engineering firm located in Silver Spring, Maryland. Mr. Lieberman's firm provides consulting engineering services to the telecommunications industry.

On May 19, 2005, Ernesto Schweikert, President of Crocodile Broadcasting Corporation, hired Mr. Lieberman and his firm to perform services relating to the operation of a radio station in New Orleans, Louisiana.[1] Mr. Lieberman sent a letter to Mr. Schweikert, stating: "This letter will confirm your retention of our firm to represent your group, and any other telecommunications entities owned by your group or you but not specifically named in this agreement in connection with various telecommunications engineering matters as you may require."

---

**1.** Crocodile Broadcasting, Inc. is a company that operates a Spanish language radio station.

Mr. Schweikert subsequently became President of Mayavision, which was incorporated on February 2, 2006. He then "began exploring the opportunity of obtaining a broadcasting license and becoming the first all-Spanish-speaking television channel in Louisiana." Mr. Lieberman performed services in connection with this venture.[2]

The exact scope of Mr. Lieberman's services to Mayavision is a matter of dispute. Mr. Lieberman contends that he was hired "to provide consulting engineering services," and that, although he traveled to Louisiana, it was merely to review the "efforts of Mayavision's local telecommunications engineer . . . to get Mayavision's television station operating and on the air." Mayavision, on the other hand, asserts that Mr. Lieberman was responsible for the design, acquisition, and installation of a new transmitter and antenna for the television station. It asserts that Mr. Lieberman came up with a plan to remove the old antenna from the station Mayavision acquired and install a new one using a "risky helicopter-based plan." Mayavision contends that the antenna and transmitter installation was "a complete failure," which resulted in "gross delays, escalated costs, and exposed Mayavision to substantial liability to other parties."

An equipment seller sued Mayavision in the Civil District Court for the Parish of Orleans in Louisiana, alleging breach of contract based on Mayavision's failure to pay for a "radio transmission system" and other "transmission equipment." Mayavision filed an answer and a cross-claim against appellants.

In early 2008, Mr. Lieberman "received a complaint which [Mayavision] filed in Orleans Parish, Louisiana against [him]

---

2. Mayavision contends that the original agreement with Crocodile Broadcasting, memorialized in the May 19, 2005, letter, did not apply to the services Mr. Lieberman performed for Mayavision. Appellant contends that the parties informally extended the agreement with Crocodile Broadcasting to services for Mayavision. It is not necessary for us to resolve that dispute to address the issues raised on appeal.

and Lieberman & Walisko." Mr. Lieberman did not respond to the lawsuit.

On May 14, 2008, the Civil District Court for the Parish of Orleans, Louisiana entered a default judgment against appellants. On May 23, 2008, the court confirmed the judgment in favor of Mayavision against appellants for $313,552 as a result of "their breach of contract, negligent performance, and failure to perform."

On July 29, 2008, Mayavision filed a Motion to Enroll Foreign Judgment in the Circuit Court for Montgomery County, requesting that the court enroll the Louisiana judgment in Maryland. That same day, the clerk of the circuit court issued a Notice of Foreign Judgment, which certified that the foreign judgment was recorded in the circuit court:

CERTIFIED COPY OF JUDGMENT FROM CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS, STATE OF LOUISIANA, DIV. "G–11" FILED ON MAY 23, 2008 IN FAVOR OF PLAINTIFF MAYAVISION, INC[.] AND AGAINST DEFENDANTS MELVYN LIEBERMAN AND LIEBERMAN & WALISKO IN THE AMOUNT OF THREE HUNDRED THIRTEEN THOUSAND FIVE HUNDRED FIFTY–TWO DOLLARS AND NO CENTS ($313,552.00), ENTERED.

On August 27, 2008, appellants filed a Motion to Vacate Entry of Foreign Judgment and Request for the Court to Refuse to Recognize and Enforce Said Judgment. Appellants argued that "the Louisiana court lacked personal jurisdiction over defendants" because appellants did "not do business in Louisiana and physical 'contacts' with Louisiana are nonexistent." They asserted that "Mr. Lieberman went to Louisiana only at the specific request of plaintiff, otherwise he would have remained in Maryland. In short, they have not had purposeful physical contacts with the forum." Appellants requested a hearing on the motion.

On December 19, 2008, Mayavision filed an Opposition to Defendant's Motion to Vacate Entry of Foreign Judgment and Related Relief. Mayavision argued that "the Louisiana Court

properly exercised 'specific' or 'special' jurisdiction over" appellants. It asserted that, in the course of providing consulting services to Mayavision, Mr. Lieberman " 'purposely availed himself' of the benefits of doing business in Louisiana and established sufficient 'minimum contacts' " with Louisiana. Mayavision appended seven monthly bills issued by appellants for consulting services from October 4, 2006, through May 30, 2007. These bills indicated that Mr. Lieberman made regular contact with persons in Louisiana by phone and email, and he traveled to Louisiana at least two times to work on the project.[3]

On January 12, 2009, a hearing was held on appellants' motion to vacate the foreign judgment. Counsel for appellants contended that "the Louisiana Court lacked personal jurisdiction over Mr. Lieberman for any purpose." Counsel noted that general jurisdiction requires "substantial, continuous, and systematic contact between the party ... and the state of Louisiana," arguing that this was "clearly missing here." He further argued that Louisiana lacked special jurisdiction over appellant, asserting that "fortuitous contacts" or "single transaction contacts just don't cut it." Counsel stated that "two trips down to Louisiana by Mr. Lieberman at the request of his client to come look at some particular thing does not subject him to the jurisdiction of [the] Louisiana Court," but "even if it does, the jurisdiction of the Louisiana Court is limited to the purpose of the visit there."

Counsel for Mayavision argued that "this is your classic civil procedure *International Shoe* [4] minimum contacts argument," and "the bottom line is ... defendant purposely availed

---

**3.** The parties agree that Mr. Lieberman traveled to Louisiana in March and May, 2007, in connection with his services to Mayavision. Mr. Lieberman traveled to Louisiana a third time, in August 2005, but this was before Mayavision was incorporated. Mayavision contends that this trip was for the purpose of discussing the possibility of Mr. Lieberman taking "an ownership interest [in Mayavision] ... in exchange for his broadcasting expertise and connections."

**4.** *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

itself of the privilege of conducting business in Louisiana." Counsel asserted that appellants "contracted with the plaintiffs in this case for the installation of an antenna and a transmitter for a television station," and "in furtherance of that project, that business contract ... [Mr. Lieberman] traveled to Louisiana on at least two occasions" and made "numerous teleconferences, mailings, et cetera back and forth in furtherance of the project." In counsel's view, "there are more than sufficient contact[s] that were made between Mr. Lieberman, his company and the State of Louisiana."

The court denied appellants' motion to vacate the judgment, finding that appellants had minimum contacts with Louisiana. The court explained its decision as follows:

> This is an *International Shoe* minimum contacts due process consideration. Did, in fact, Melvyn Lieberman have sufficient contacts with the State of Louisiana that, whereby he would be put on not[ice], would he be taking advantage of the laws of Louisiana with a project? And would he also be available to be knowing that he would be hailed into court for possible suit?
>
> This was not just a consult over the phone of what [do] you guys think we should do if we're going to put up a tower. This was a hands on, ongoing representation of the plaintiff on dealing with this tower. That is, Mr. Lieberman was very involved in this for a long period of time dealing with a lot of telephone conferences, dealing with the specs, and dealing with a structure. A structure that was put[ ] up regardless of whether it was put up well or not well, it was a structure that was put up.
>
> \* \* \*
>
> But when he has an ongoing teleconference with the people in New Orleans, when he's taking on more of a role than a consultant, and is actually he is involved in the process of setting it up and how they're going to move it and what they're going to do. And he makes trips to the soil of Louisiana on a minimum of two occasions. And we'll say no more than two occasions. And he's putting up a

structure or he's involved in a structure being put up. He knows full well and he should know well and he's on notice that if that structure falls and hits somebody, that suit['s] going to be in New Orleans or in Louisiana. If there's a suit on the contract or in the installation or the design of anything, that's going to be in the state of Louisiana.

The only saving grace that he had is that the laws of Maryland wouldn't apply. However, under due process and looking at the laws of Maryland on *International Shoe* and all the other cases that have been decided by our Court of Appeals, I clearly find that he had minimum contacts in the State of Louisiana. That he would be on notice that he'd be hailed into court on a lawsuit.

He also took advantage of the rights and privileges of doing business in Louisiana. He had minimum contacts. Considering all the factors and looking at all the bills, this Court will deny the motion to vacate the entry of foreign judgment [from] the State of Louisiana.

On January 16, 2009, the circuit court entered an order denying appellants' motion. This timely appeal followed.

## DISCUSSION

### I.

### Personal Jurisdiction

Appellants contend that the circuit court erred in denying their motion to vacate the recorded judgment. They argue that the Louisiana court lacked personal jurisdiction over them, asserting that they did not have "sufficient minimum contacts" with Louisiana to give Louisiana personal jurisdiction over them. Appellants further contend that the assertion of personal jurisdiction by Louisiana did not comport with concerns of "reasonableness" and "fairness," arguing that Maryland was the appropriate forum for litigating the dispute.

Mayavision argues that the circuit court properly determined that appellants " 'purposefully availed' himself/themselves of the benefits of doing business in Louisiana." It

argues that "Lieberman's connection with Louisiana is sufficient to satisfy the 'minimum contacts' test." In support, Mayavision lists the following facts:

A. Mayavision retained Lieberman to provide advice and consulting services, and to assist in setting up contacts with third parties to facilitate the installation of the broadcasting antennae that was to be installed in Louisiana.

B. Lieberman regularly invoiced Mayavision for work performed from October 2006 through November 2007. These invoices describe, in detail, the work performed by Lieberman in Louisiana.

C. Lieberman regularly communicated with various parties located in Louisiana, including Schweikert, Ernest Harvey (Schweikert's engineer), Entergy of Louisiana, and Mayavision's attorney, Romualdo Gonzalez. All of these communications were related to work on the antennae and transmitter that would be installed in Louisiana. Specifically, there are references throughout the invoices relative to various locations being considered for the installation of a broadcasting tower. Locations referenced included New Orleans, Kenner, Chalmette or Gretna—all of which are located in South Louisiana.

D. Lieberman took at least two trips to New Orleans, in direct contradiction to this sworn affidavit that he only went to Louisiana once "at the Plaintiff's request."

Mayavision further argues that "the trial court properly determined that the exercise of jurisdiction by the Louisiana court was fair and reasonable."

Article IV, § 1 of the United States Constitution provides, in part, that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." The United States Supreme Court has held that, in order "to fulfill this constitutional mandate, 'the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had

in the state where it was pronounced.' " *Imperial Hotel, Inc. v. Bell Atl. Tri–Con Leasing Corp.,* 91 Md.App. 266, 270, 603 A.2d 1371 (1992) (quoting *Underwriters Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Assoc. et al.,* 455 U.S. 691, 704, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982)).

■ There are limits, however, on this provision. "[B]efore one state court is bound by a judgment rendered by a court in another state, it may inquire into the propriety of a foreign court's exercise of jurisdiction. If the foreign court did not have jurisdiction, full faith and credit need not be given." *Id.* at 270–71, 603 A.2d 1371.

■ Maryland's Uniform Enforcement of Foreign Judgments Act (the "Act") [5] "provides the mechanism by which a judgment creditor or the attorney of a judgment creditor may enforce a foreign judgment." *Id.* at 272, 603 A.2d 1371. "[W]hen a properly authenticated copy of a foreign judgment is presented for recording and enforcement, the burden is on a resisting party to establish that the rendering court lacked either subject matter or personal jurisdiction." *Legum v. Brown,* 395 Md. 135, 145–46, 909 A.2d 672 (2006). Jurisdiction is " 'presumed unless disproved by extrinsic evidence or by the record itself.' " *Id.* at 145, 909 A.2d 672 (quoting *Adam v. Saenger,* 303 U.S. 59, 62, 58 S.Ct. 454, 82 L.Ed. 649 (1938)). When a person offers "some competent evidence" to support an attack on jurisdiction, "the forum court must make an inquiry and determine from the evidence whether jurisdiction existed. It cannot give full faith and credit to the judgment based solely on the presumption of regularity once competent and persuasive evidence is presented that is facially sufficient to rebut the presumption." *Id.* at 147, 909 A.2d 672. *Accord Oxendine v. SLM Capital Corp.,* 172 Md.App. 478, 485–86, 915 A.2d 1030 (2007).

---

**5.** *See* Md.Code (2006 Repl.Vol.), §§ 11–801 to 807 of the Courts and Judicial Proceedings Article.

■ In determining whether another state properly exercised personal jurisdiction over a Maryland resident, the court typically begins with a two-step process:

> First, "the trial court must determine whether the [foreign state] purports to authorize the assertion of personal jurisdiction ... to the full limits allowed by constitutional due process." Second, the Maryland court must determine "whether the exercise of jurisdiction permitted by the [foreign] statute violates the due process clause of the fourteenth amendment."

*Oxendine*, 172 Md.App. at 486, 915 A.2d 1030 (quoting *Superior Court of Cal., County of Stanislaus, Family Support Div. ex rel. Jones v. Ricketts*, 153 Md.App. 281, 332, 836 A.2d 707 (2003)).

In Louisiana, however, the Supreme Court of Louisiana has explained:

> [T]he sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. If the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long-arm statute. The limits of Louisiana's long-arm statute and the limits of constitutional due process are now coextensive.

*Superior Supply Co. v. Assoc. Pipe & Supply Co.*, 515 So.2d 790, 792 (La.1987).[6]

---

**6.** Louisiana's long-arm statute provides, in part, as follows:
 A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
 (1) Transacting any business in this state. ˋ
 (2) Contracting to supply services or things in this state.
 * * *
 B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
 LA.REV.STAT. ANN. § 13:3201 (2006).

■ Thus, our sole inquiry is whether the Louisiana court's exercise of jurisdiction in this case was proper under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. To satisfy due process, " 'the exercise of personal jurisdiction over an out-of-state defendant requires that the defendant have established minimum contacts with the forum state and that to hale him or her into court in the forum state would comport with traditional notions of fair play and substantial justice.' " *CSR, Ltd. v. Taylor*, 411 Md. 457, 476, 983 A.2d 492 (2009) (quoting *Bond v. Messerman*, 391 Md. 706, 722, 895 A.2d 990 (2006)). *Accord Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■■ The type of contacts required for a State to exercise personal jurisdiction depends on " 'the nature of the action brought and the nexus of the contacts to the subject matter of the action.' " *CSR, Ltd.*, 411 Md. at 477, 983 A.2d 492 (quoting *Camelback Ski Corp. v. Behning*, 312 Md. 330, 338, 539 A.2d 1107 (1988)). For general jurisdiction, the cause of action can be unrelated to the defendant's contact with the forum state, *Miserandino v. Resort Props., Inc.*, 345 Md. 43, 50, 691 A.2d 208, *cert. denied*, 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 292, *cert. denied*, 522 U.S. 963, 118 S.Ct. 397, 139 L.Ed.2d 310 (1997), but the defendant's contacts with the forum state must be "continuous and systematic." *CSR, Ltd.*, 411 Md. at 477, 983 A.2d 492. By contrast, "specific jurisdiction" arises "where the cause of action arises out of the defendant's contacts with the forum state." *Miserandino*, 345 Md. at 50, 691 A.2d 208.

■ Here, the parties agree that the issue involves whether there was specific jurisdiction over appellants. In determining whether specific personal jurisdiction satisfies due process:

[W]e consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3)

whether the exercise of personal jurisdiction would be constitutionally reasonable.

*CSR, Ltd.*, 411 Md. at 477, 983 A.2d 492 (quoting *Beyond Sys. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 26, 878 A.2d 567 (2005)). Appellants challenge the first and third criteria, whether Mr. Lieberman purposefully availed himself of the privilege of conducting activities in the State and whether the exercise of jurisdiction by the Louisiana court was reasonable.

The United States Supreme Court has stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation omitted). It explained:

> T[he] "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S.Ct. 2174 (citations and footnotes omitted). *Accord CSR, Ltd.*, 411 Md. at 479–80, 983 A.2d 492.

In *Burger King*, 471 U.S. at 464, 105 S.Ct. 2174, the Court held that a Florida court had jurisdiction over a Michigan resident who breached a franchise agreement with a Florida corporation by failing to make payments to the Florida office.

Although the franchisee had not traveled to Florida, the Court explained that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." *Id.* at 476, 105 S.Ct. 2174. The Court noted that "this franchise dispute grew directly out of 'a contract which had a *substantial* connection with'" Florida. *Id.* at 479, 105 S.Ct. 2174 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). The Court stated:

> Eschewing the option of operating an independent local enterprise, Rudzewicz deliberately "[reached] out beyond" Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. [*Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) ]. Upon approval, he entered into a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated."

*Id.* at 479–80, 105 S.Ct. 2174. The Court concluded that "Rudzewicz' refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida," making it "presumptively reasonable for Rudzewicz to be called to account" for such injuries in Florida. *Id.* at 480, 105 S.Ct. 2174.

Similarly, in *Hagan v. Stone*, 742 So.2d 101 (La.Ct.App. 1999), the Court of Appeal of Louisiana determined that a Louisiana court had personal jurisdiction over a non-resident who entered into a business relationship with a Louisiana resident. Stone operated a computer training business in Mississippi, and Hagan, a Louisiana resident, sought to open a similar business in Louisiana. *Id.* at 103. Hagan traveled to

Mississippi, and they entered into a contract that would allow Hagan to use Stone's training materials and business name, in exchange for Stone receiving a percentage of Hagan's sales. *Id.* The contract also included a choice of laws provision, indicating that the contract would be enforced "under the laws of Mississippi." *Id.* When disputes arose regarding the quality of the training materials, Hagan filed a breach of contract action against Stone in Louisiana. *Id.* at 102–03.

The Court of Appeal held that Louisiana had personal jurisdiction over Stone. *Id.* at 103. It stated that "Stone should have reasonably anticipated being haled into a Louisiana court" based upon her "activities in carrying out the contractual provisions and the long-term economic relationship created by the contract." *Id.* at 104. The court continued:

Even despite the fact that the contract was executed in Mississippi, Stone knowingly negotiated and entered into an agreement with two Louisiana businesswomen. Moreover, she was aware that the products she sold to Hagan, and the services for which she trained them, would be utilized in this forum. In fulfillment of agreement terms, Stone communicated frequently with Hagan, sometimes by her own initiation, from 1994 through early 1997, via phone, mail, fax, and courier service. She traveled to Hagan's facilities on two occasions. For the second meeting, referred to as "1st Quarterly Pow Wow," Stone prepared an agenda and discussed with and advised Hagan regarding the contract terms, i.e., the quality of the manuals and the quarterly fee, as well as marketing and hiring strategies and other business-related issues.

*Id.* The court concluded that Stone's activities were not "fortuitous" or "attenuated," but rather, they constituted "a 'reaching out' beyond Mississippi through the creation of a continuing economic relationship with Louisiana citizens sufficient to show that Stone 'purposefully availed' [herself] of the benefits and protections of Louisiana's laws." *Id.* at 105.

█ Applying the above analysis, we conclude that appellants established minimum contacts with Louisiana. They

*"purposefully avail [ed ]* [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quotation omitted). The billing records submitted to the circuit court establish that, from October 2006 until May 2007, appellants billed Mayavision $19,210.74 for its services. The invoices show that Mr. Lieberman communicated with individuals in Louisiana on a regular basis, and he traveled to Louisiana on two occasions, in March and May of 2007, to work on this project.[7] There is no question that Mr. Lieberman's services involved, at the least, consultation regarding the installation of a television antenna and transmitter in Louisiana. The record established that Mr. Lieberman purposefully availed himself of the privilege of conducting business in Louisiana, and the minimum contacts test is satisfied.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154). Thus, the second part of the due process test concerns the fairness of the exercise of jurisdiction.

In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court identified several factors to consider in making this determination: (1) "the forum State's interest in

---

7. Appellants attempt to minimize the significance of Mr. Lieberman's travel to Louisiana by stating that "Mr. Lieberman went to Louisiana only at the specific request of Mayavision." Mr. Lieberman, however, traveled to Louisiana as part of his consulting services with Mayavision, and he billed Mayavision for those services. *See Welles Products Corp. v. Plad Equip. Co.,* 563 F.Supp. 446, 450 (N.D.Ill.1983) (Canadian corporation's contract negotiations and decision to send employee to "Illinois to oversee and inspect the design and production of the ordered components" demonstrate that corporation "purposefully availed" itself of conducting activities in Illinois).

adjudicating the dispute"; (2) "the plaintiff's interest in obtaining convenient and effective relief"; (3) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (4) the "shared interest of the several States in furthering fundamental substantive social policies." A litigant seeking to defeat jurisdiction must present a "compelling case" that "would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174.

Appellants contend that the assertion of personal jurisdiction by Louisiana was not reasonable. They argue: (1) "a greater burden would be placed on Lieberman in litigating this action in Louisiana than would be placed on plaintiff in litigating this action in Maryland"; (2) "since Lieberman resides and conducts business in Maryland, that jurisdiction has a stronger interest than Louisiana in adjudicating this lawsuit"; and (3) "Maryland is a more convenient forum for appellants than Louisiana is for appellee because appellee is subject to regulation by the Federal Communications Commission in Washington, D.C., and is regularly in appearance in legal matters in this area while Lieberman has no operations and does no business in Louisiana." They further argue that, based on the choice of law provision in the contract, appellants had a "reasonable belief" that "they could only be sued in Maryland," and that "should be considered as one more factor directing against a finding of personal jurisdiction." [8]

Mayavision contends that the circuit court "correctly determined that Lieberman did not present persuasive evidence to overcome the presumption that the Louisiana courts had jurisdiction to render the original judgment." It argues that, "[g]iven the locus of the events giving rise to the litigation (Louisiana), and the fact that Lieberman did not consider it a burden to perform services for a Louisiana resident on [a] Louisiana project, Lieberman cannot now conveniently complain that it is unfair to defend" the lawsuit in Louisiana. It

---

8. A contract between appellants and Mr. Schweikert, discussed *supra,* included a choice of law provision indicating that the contract would "be governed by Maryland law."

further argues that "Louisiana has a greater interest than Maryland in this litigation" because the project, the documentation, and the majority of the witnesses were in Louisiana.

With respect to the choice of law provision in the contract, Mayavision asserts that the letter referred to by appellants as the contract predated the incorporation of Mayavision, and the work was for "services relative to a radio station," making it "entirely irrelevant to this litigation." Even if relevant, Mayavision asserts that the contract "did not designate, restrict, or define jurisdiction or venue," and a "Louisiana Court would have had no difficulty applying substantive Maryland law if the letter was found to be relevant to this dispute."

We hold that appellants failed to present a compelling case that jurisdiction in Louisiana was unreasonable. With respect to Louisiana's interest in adjudicating the dispute, Louisiana had an interest in the litigation involving a failed effort to install a television transmitter and antenna on a tower in Louisiana, owned by a Louisiana company. *See Burger King,* 471 U.S. at 473, 105 S.Ct. 2174 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

With respect to the convenience to the parties, the Supreme Court has explained that burden and inconvenience that would render a forum constitutionally unreasonable occurs only in limited circumstances:

> **Due process limits on jurisdiction do not protect a defendant from all inconvenience of travel, and it would not be sensible to make the constitutional rule turn solely on the number of miles the defendant must travel to the courtroom. Instead, the constitutionally significant "burden" to be analyzed relates to the mobility of the defendant's defense.** For instance, if having to travel to a foreign forum would hamper the defense because witnesses or evidence or the defendant himself were immobile, or if there were a disproportionately large number of witnesses or amount of evidence that would have to be

transported at the defendant's expense, or if being away from home for the duration of the trial would work some special hardship on the defendant, then the Constitution would require special consideration for the defendant's interests.

*World–Wide Volkswagen,* 444 U.S. at 301, 100 S.Ct. 559 (citation and footnote omitted) (emphasis added).

 Here, as Mayavision points out, "because the Project was located in Louisiana, most necessary documentation and the majority of witnesses were located there." Appellants have failed to assert any argument that traveling to Louisiana to defend Mayavision's lawsuit would have compromised their ability to assert a defense. As the Supreme Court has stated:

> [T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *McGee,* 355 U.S. at 223, 78 S.Ct. 199).

Finally, appellants point to the choice of law provision in the contract as "one more factor directing against a finding of personal jurisdiction." As previously discussed, Mayavision disputes the assertion that the contract between appellants and Crocodile Broadcasting applied to the services rendered to Mayavision. Even if the contract did apply, however, "choice-of-law analysis . . . is distinct from minimum-contacts jurisdictional analysis," *id.* at 481, 105 S.Ct. 2174, and the provision does not preclude a finding that Louisiana had personal jurisdiction over appellants.

Under the circumstances here, the exercise of personal jurisdiction by Louisiana comported with " 'fair play and substantial justice.' " *Id.* at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe,*

326 U.S. at 320, 66 S.Ct. 154). The circuit court properly denied appellants' motion to vacate the recorded judgment.

## II.

### Evidentiary Hearing

■ We turn next to appellants' contention that the court erred when it failed to hold an evidentiary hearing on the motion to vacate entry of the foreign judgment. As appellants note, in *Oxendine*, 172 Md.App. at 485, 915 A.2d 1030, this Court stated that, "when a colorable challenge to the jurisdiction of the foreign court is raised, the Maryland court is required to conduct an evidentiary hearing to determine whether the foreign court had jurisdiction to render the judgment."

Appellants contend that the circuit court erred when it did not hold an evidentiary hearing regarding the claim that appellants did not have minimum contacts with Louisiana to support Louisiana's exercise of personal jurisdiction. Mayavision contends that there was no error entitling appellants to relief, for either of two reasons. First, Mayavision argues that this issue is not preserved because appellants did not object to "the nature of the proceeding" below. Second, Mayavision argues that the hearing "was clearly evidentiary," asserting that "Lieberman and Mayavision each submitted a number of exhibits," including affidavits by both parties and invoices for the work that Mr. Lieberman performed for Mayavision.

Initially, we address Mayavision's assertion that this claim is not preserved for our review. The appellate courts have held that a litigant may waive an argument regarding the failure of a court to hold an evidentiary hearing by failing to raise the argument in the circuit court. *See, e.g., Agurs v. State,* 415 Md. 62, 75 n. 8, 998 A.2d 868 (2010) ("By failing to request an evidentiary hearing, the State waived that right."); *Jacobs v. Flynn,* 131 Md.App. 342, 376, 749 A.2d 174 (argument that court erred in failing to hold evidentiary hearing to determine whether doctors were joint tortfeasors was waived

because not raised below), *cert. denied,* 359 Md. 669, 755 A.2d 1140 (2000).

■■■ Here, as appellants note, counsel advised the court at the beginning of the hearing that a party challenging jurisdiction "is entitled to a hearing on the issue of whether there was jurisdiction, personal jurisdiction in the Court down in Louisiana." At no time, however, did appellants request an evidentiary hearing, request to present evidence to the circuit court other than the exhibits attached to the motion, or assert that they were entitled to a hearing other than that which occurred.[9] Appellants' contention on appeal that the hearing afforded was insufficient, therefore, is not preserved for our review. *See Robinson v. State,* 404 Md. 208, 211, 946 A.2d 456 (2008) (issues raised for first time on appeal are not preserved for appellate review).

Even if preserved, we would find appellants' contention to be without merit. An evidentiary hearing is a "hearing at which evidence is presented, as opposed to a hearing at which only legal argument is presented." BLACK'S LAW DICTIONARY 789 (9th ed.2009).

Here, both parties presented exhibits to the court, including affidavits and copies of invoices from appellants for services rendered to Mayavision. Counsel discussed the exhibits in detail, and the court relied on the exhibits in denying appellants' motion. In short, the hearing was tantamount to an evidentiary hearing. Even if preserved, appellants' claim of error is devoid of merit.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**9.** We note that, when the court questioned appellants' counsel regarding the extent of his client's involvement in the Louisiana project, appellants' counsel stated as follows:

[DEFENSE COUNSEL]: And he's here to testify if the Court wants to hear his testimony.

[THE COURT]: No, I don't.

At no time did appellants assert that they wanted, or were entitled, to have Mr. Lieberman testify.