13 A.3d 823

Lenan CAPPEL, et ux.

v.

RIASO, LLC.

No. 2727, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Feb. 7, 2011.

348

Nigel L. Scott (Scott & Yallery–Arthur, on the brief), Washington, D.C., for appellant.

Richard F. Boddie (Slocum & Boddie, PC, on the brief), Springfield, MD, for appellee.

Panel: MEREDITH, MATRICCIANI, J. FREDERICK SHARER, (Retired, specially assigned), JJ.

MEREDITH, J.

In this appeal, we are asked to determine whether, in an action to enforce a confession of judgment clause in a guarantee of a promissory note executed outside the State of Maryland, the Circuit Court for Montgomery County had personal

jurisdiction over Lenan Cappel and his wife, Pauline Cappel, (the "Cappels"), appellants, by virtue of their ownership of unimproved real property in Maryland unrelated to the cause of action. It is our determination that the circuit court lacked personal jurisdiction over the Cappels, and we will therefore vacate the judgment which the circuit court entered in favor of Riaso, LLC, ("Riaso"), appellee. As a result, we will not reach the other questions posed by the Cappels.[1]

### Facts and Procedural History

Riaso is a District of Columbia limited liability company with offices located at 3817 Whitman Road, Annandale, Virginia. The Cappels are residents of Washington, D.C. They are limited partners of, and hold a 50% ownership interest in, Hope 7 Monroe Street Limited Partnership ("Monroe LP"),

---

1. The Cappels presented the following questions for our review:
    1. Whether the ownership of a parcel of real property by a non resident of the State of Maryland is sufficient for the Maryland Court to exercise personal jurisdiction over nonresident parties for the purposes of issuing a judgment by confession in a dispute between the nonresident parties whose dispute arose outside of the state and did not involve the real property or personal or business contacts within the State of Maryland or any of its counties.
    2. Whether the trial court erred in denying Appellants Motion to open, vacate or modify a judgment by confession entered by the clerk against non resident[ ] Defendants in light of an existing automatic stay under 11 U.S.C. § 362(a) et seq.
    3. Whether the trial court erred in denying Appellants Motion to open, vacate and modify a judgment by confession against a debtor in bankruptcy prior to determination of the liquidated value of the Bankrupt Estate and the credits, if any, that could be applied against the total amount of the debt stated in the Complaint for Confessed Judgment.
    ■. Whether the trial court erred by granting a Confessed Judgment to Appellee where Appellant has a pending action that alleged breach of fiduciary duty, fraud and misrepresentation in the execution of the Promissory Note, Deed of Trust and Unconditional Guarantee Agreements that formed the basis of the Complaint for Confessed Judgment.
    ■. Whether Appellants' allegations of Fraud, Breach of Fiduciary Duty, and Misrepresentation in its Motion to open, vacate or modify presented a meritorious defense to a judgment by confession that required the court to permit the filing of pleadings and evidence on the validity of the judgment by confession.

which is a District of Columbia limited partnership. Monroe LP's general partner is Hope 7 Inc. Monroe LP holds title to real property improved by an apartment building at 1020 Monroe Street, NW, Washington, D.C.

On November 22, 2006, Monroe LP borrowed $1,600,000 from Riaso in order to, among other purposes, pay off an existing mortgage on the 1020 Monroe Street property. The note evidencing the loan was signed in Virginia. In the note, Monroe LP agreed to the entry of a confessed judgment against it in case of default, in which event Monroe LP would be subject to an increased interest rate of 23%. The confessed judgment provision of the note—Paragraph 11—provided that "[Monroe LP] consents to the jurisdiction of and agrees that venue shall be proper in the Circuit Court of any County of the State of Virginia." In Paragraph 19 of the note, Monroe LP also consented to personal jurisdiction in the United States District Court for the District of Columbia and the United States District Court for the Eastern District of Virginia.

As a condition of the loan, Riaso required the Cappels to enter into identical personal guarantee agreements in which the Cappels each consented to the entry of a confessed judgment against them in the event of Monroe LP's default. Specifically, the Cappels agreed to the entry of judgment by confession "for the entire principal amount of the Note then remaining unpaid, whether by acceleration or otherwise, together with all court costs and attorneys' fees equal to fifteen percent (15%) of the amount due." In addition, the Cappels agreed to pay "all amounts due with respect to the Note, including all interest payments thereon."

Like the promissory note, both of these guarantees were executed in Virginia. In Paragraph 7 of the guarantees, the Cappels agreed to appear "in any court of competent jurisdiction in the State of Virginia or any other State or Territory of the United States" to confess judgment. Paragraph 20, however, stated that Maryland law governs the guarantees:

20. *Governing Law.* This Guaranty Agreement shall be deemed to be made in and governed by the laws of the State of Maryland, without reference to principles of conflict of laws.

After Monroe LP defaulted, Riaso brought an action against the limited partnership in Washington, D.C., to enforce the terms of the promissory note. Monroe LP subsequently filed for bankruptcy in the United States Bankruptcy Court for the District of Columbia.

On July 16, 2009, based on the guarantee agreements, Riaso filed a complaint and affidavit for confessed judgment against the Cappels, pursuant to Maryland Rule 2–611, in the Circuit Court for Montgomery County. The Cappels were served notice of this complaint in Washington, D.C. On July 16, 2009, the clerk of the circuit court entered judgment against the Cappels in favor of Riaso for $2,938,312.51, plus attorneys' fees of 15% of that amount. The judgment was comprised of the following: (1) $1,600,000—the principal due on the promissory note; (2) $203,200.00 in late fees; (3) $1,092,460.11 in interest as of July 1, 2009; and (4) "Foreclosure expenses and Trustee's fee(s) of $42,652.40."

On September 15, 2009, pursuant to Rule 2–611(d), the Cappels filed a motion to open, modify, or vacate the order of confessed judgment. In their motion, the Cappels argued, among other defenses, that the circuit court lacked personal jurisdiction over them because of their minimal connections to the State of Maryland.

Riaso filed an opposition in which it argued that the court had personal jurisdiction based on the Cappels' ownership of a piece of undeveloped property located at 14500 Friendlywood Road, in Burtonsville in Montgomery County, Maryland. The Cappels had acquired the property in 1997. According to Riaso, the Cappels' "purchase of this vacant property is the transacting of business" in Maryland. Riaso argued:

In this matter, [the Cappels'] contacts with the State of Maryland are more than cursory. They acquired property in 1997 and have continuously owned it since then.... [The

Cappels] have "continuously and systematically" continued to pay taxes, own the property and otherwise maintained a contact with the State of Maryland. The [Cappels] have purposefully availed themselves of the benefits and protections of the forum State by virtue of their ownership of real property within this forum. Therefore, this Court may exercise general jurisdiction over the defendants.

(Footnotes omitted.)

The circuit court conducted a hearing on the Cappels' motion. At the hearing, Riaso again argued that the property at 14500 Friendlywood Road is a "viable asset that the [Cappels] are using to transact business in the state of Maryland." After considering the parties' arguments, on November 10, 2010, the court ruled that it had personal jurisdiction, and denied the Cappels' motion to vacate the entry of judgment in favor of Riaso. The court explained its decision as follows:

THE COURT: Okay. I've read *Camelback* [312 Md. 330, 539 A.2d 1107 (1988)] I've read *International Shoe* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] a long time ago. . . .

\* \* \*

Now whether the court applies the standard in *Camelback*, which the Court has reviewed with respect to the relevant factors, the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversy and the shared interest of the several states in furthering fundamental substantive social policies or whether we simply apply *International Shoe*, which is a minimum contacts provision, **this Court is satisfied that the representation concerning the nature of the contacts, i.e., property in Montgomery County, and transacting business is sufficient to constitute minimum contacts** under *International Shoe* or the sufficient criteria that are laid out in page 5 of the *Camelback* decision. Either way, the Court does find that there is jurisdiction, both personal and subject matter jurisdiction.

With respect to the motion to open, modify, or vacate the order of confessed judgment under 2–611(d), the Court realizes that in terms of the burden the courts sometime[ ] look askew upon confessed judgments and [they are] to be looked upon with great introspection, if you will, with respect to the nature of the confessed judgment. But based upon the allegations of this, this Court is not satisfied that this basis to open and modify or vacate that confessed judgment [is met]. The motion is denied.

(Emphasis added.)

Within ten days, the Cappels moved to alter, amend, or modify the judgment entered on November 10, 2010, arguing, among other grounds, the lack of the court's personal jurisdiction. The circuit court denied the motion to alter or amend. The Cappels then filed a notice of appeal.

### Discussion

Rule 2–611(d) allows a defendant to raise defenses to a confessed judgment. The rule states:

(d) **Motion by defendant.** The defendant may move to open, modify, or vacate the judgment within the time prescribed for answering by sections (a) and (b) of Rule 2–321. The motion shall state the legal and factual basis for the defense to the claim.

The courts of this State have not explicitly stated that the defense of lack of personal jurisdiction is properly raised in a Rule 2–611(d) motion. *Cf. Burnside v. Wong,* 412 Md. 180, 195, 986 A.2d 427 (2010) ("The defense of lack of personal jurisdiction, unlike subject matter jurisdiction, is waived unless raised in a mandatory preliminary motion, Rule 2–322(a)(1); Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 202 (3rd ed. 2003).") Nevertheless, a filing under Rule 2–611(d) is in the nature of a mandatory preliminary motion. Moreover, Maryland appellate courts have, on a number of occasions, addressed the defense of lack of personal jurisdiction raised in a confessed judgment action. *See, e.g., Krashes v. White,* 275 Md. 549, 341 A.2d 798 (1975).

We deem it appropriate, therefore, to address on its merits the Cappels' argument that the circuit court lacked personal jurisdiction.

The existence of personal jurisdiction is a question of law. *CSR v. Taylor*, 411 Md. 457, 471, 983 A.2d 492 (2009). Because Riaso was the plaintiff in the circuit court, it bears "the burden to establish the propriety of personal jurisdiction." *Id.* at 467 n. 2, 983 A.2d 492. Under Md.Code (1973, 2006 Repl.Vol.), Courts & Judicial Proceedings Article ("CJ"), § 6–102(a), the personal jurisdiction of Maryland's courts includes, but is not limited to, "any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State." None of these circumstances exist with respect to the Cappels in the present case. The Cappels are residents of Washington, D.C., and were served out-of-state.

Maryland courts undertake two interrelated inquiries in deciding whether personal jurisdiction exists over an out-of-state defendant. *CSR, supra,* 411 Md. at 472, 983 A.2d 492. Our first task is to consider whether the provisions of Maryland's long-arm statute, CJ § 6–103, are met. Next, we apply the constitutionally minimum standards for personal jurisdiction required under the Due Process Clause of the Fourteenth Amendment. *CSR, supra,* 411 Md. at 473, 983 A.2d 492. The Court of Appeals has explained, *id.* at 475, 983 A.2d 492, how these two considerations relate to one another:

> [T]he statutory and constitutional components of our jurisdictional inquiry are not mutually exclusive. Rather, the components become merged, as this Court has held that "the long arm statute represents an effort by the Legislature to expand the boundaries of permissible *in personam* jurisdiction to the limits permitted by the Federal Constitution." *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818, 821 (1976).

Riaso contends that personal jurisdiction over the Cappels is proper by virtue of their ownership of unimproved real property located within Maryland. But an out-of-state resident's ownership of real property unrelated to the cause of

action, absent other ties to the forum state, is insufficient to establish jurisdiction under either the long-arm statute or the Due Process Clause.

CJ § 6–103(b)(5) is the provision of the long-arm statute which appears most relevant to the facts of the present case. The section provides:

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

\*     \*     \*

(5) Has an interest in, uses, or possesses real property in the State[.]

On its face, this provision appears to support the circuit court's exercise of jurisdiction over the Cappels. But jurisdiction under this subsection has been limited to causes of action connected with the property interest. In *McLaughlin v. Copeland,* 435 F.Supp. 513, 529 (D.Md.1977), the United States District Court for the District of Maryland refused to exercise personal jurisdiction pursuant to CJ § 6–103(b)(5) over defendants alleged to own real property in Maryland where the property in this State was not related to the cause of action. The court explained, *id.:*

Plaintiff alleges that both [defendants] had an "interest in, used, or possessed real property" in Maryland and therefore the court has jurisdiction over them under subsection (b)(5). In his deposition, [Defendant A] stated that he has not owned any real property in Maryland since September 1, 1974. [Defendant B] does not refute the allegation in either of his two affidavits. **Even if the court assumes that [the defendants] have an interest in, use or possess real property in Maryland, subsection (b)(5) does not confer jurisdiction over them. Jurisdiction under (b)(5) is limited to causes of action having some connection with the alleged property interest.** *Annotated Code of Maryland,* Cts. & Jud.Proc.Art. § 6–103(a); *see, e.g., McGinnis v. [Rogers* ], 262 Md. 710, 279 A.2d 459, 472 (1971); Auerbach, *The "Long Arm" Comes to Maryland,* 26 Md.L.Rev. 13, 44–45 (1966); *Foster, [Judicial Economy: Fairness and Convenience of Place of Trial: Long–Arm Jurisdiction in*

*District Courts,*] 47 F.R.D. [73,] 85–86 n. 37. **It is apparent that subsection (b)(5) is not a source of jurisdiction because this suit arises out of the defendants' alleged acts which, even if proven, are not connected with any property interests that the defendants may have in Maryland.**

(Emphasis added.)

In the present case, the cause of action arises out of a default on a promissory note that bears no connection with the unimproved parcel of real estate the Cappels own in Maryland. Because the instant action bears no relation to the Cappels' ownership of real property in Maryland, CJ § 6–103(b)(5) is not a source of personal jurisdiction over the Cappels in this case.

■■■ Moreover, the Due Process Clause requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Base Metal Trading v. OJSC Novokuznetsky Aluminum,* 283 F.3d 208, 213 (4th Cir.2002), *cert. denied,* 537 U.S. 822, 123 S.Ct. 101, 154 L.Ed.2d 30 (2002) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The existence of these minimum contacts requires there to "be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (emphasis added). In *Burger King v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the United States Supreme Court explained the purpose of requiring a finding that a defendant purposefully availed himself of the privileges of the forum state before the defendant can be haled into court:

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person[.]" Jurisdiction is proper, however, where the contacts

proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

(Internal citations omitted.)

In *Camelback Ski Corp. v. Behning* [*Camelback II* ], 312 Md. 330, 338, 539 A.2d 1107, *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988), the Court of Appeals noted that "the quality and quantity of contacts required to support the exercise of personal jurisdiction will depend upon the nature of the action brought and the nexus of the contacts to the subject matter of the action." In determining whether a defendant's contacts with the forum state are sufficient, courts employ the "useful tool" of dividing cases into the categories of specific or general jurisdiction. *Id.* at 339, 539 A.2d 1107. Specific jurisdiction is triggered "where the cause of action arises from, or is directly related to, the defendant's contacts with the forum state." *CSR, supra,* 411 Md. at 477, 983 A.2d 492. General jurisdiction can be asserted if the cause of action is unrelated to the defendant's contacts with the forum state, but general jurisdiction requires that the defendant's contacts "be continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Cases based upon general jurisdiction require a defendant to have stronger contacts with the forum state than those required in cases based upon specific jurisdiction. *See Camelback II, supra,* 312 Md. at 339, 539 A.2d 1107 ("the quantum of required contacts increases as the nexus between the contacts and the cause of action decreases").

As the Court of Appeals explained in *Republic v. Mission West,* 391 Md. 732, 760, 895 A.2d 1006 (2006) (footnote omitted):

We have stated that to exercise either general or specific jurisdiction, the defendant must maintain sufficient minimum contacts with the forum such that the exercise of jurisdiction meets the "general test of essential fairness." *Presbyterian Univ. Hosp. v. Wilson,* 337 Md. 541, 551–52, 654 A.2d 1324, 1330 (1995) (citing *Camelback Ski Corp. v. Behning,* 312 Md. 330, 336, 539 A.2d 1107, 1110 (1988)). **Thus, "when the cause of action does not arise out of, or is not directly related to, the conduct of the defendant within the forum, contacts reflecting continuous and systematic general business conduct will be required to sustain jurisdiction."** *Camelback,* 312 Md. at 338, 539 A.2d at 1111 (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958); and *Camelback Ski Corp. v. Behning,* 307 Md. 270, 279–80, 513 A.2d 874, 878–79 (1986)); *see also Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC,* 388 Md. 1, 22, 878 A.2d 567, 580 (2005) ("If the defendant's contacts with the State are not the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent contacts with the State. To establish general jurisdiction, the defendant's activities in the State must have been continuous and systematic.") (Citations omitted) (Internal quotations omitted).

(Emphasis added.)

Riaso's claim that the State of Maryland can assert personal jurisdiction over the Cappels in the present case is premised entirely on ownership of property in this State. Riaso argues that the Cappels maintain systematic contact with Maryland by virtue of their title to the property located at 14500 Friendlywood Road, which they have owned since 1997.[2] The ownership of this property is unrelated to Riaso's cause of

---

2. Riaso also points to the Cappels' ownership of another property in Maryland, located at 8406 Navahoe Drive in Prince George's County. A

action, which arises from the guarantee of a promissory note for a loan in connection with a parcel of real property in Washington, D.C. Because there is no nexus between the Cappels' sole current contact with Maryland and Riaso's cause of action, the "quantum of required contacts [to support personal jurisdiction] increases." *Camelback II, id.*

Riaso argues that the requisite quantum of contacts is reached because the Cappels not only own the property, but also pay taxes on it, and Riaso posits that the Cappels presumably hold it "for development or speculation." Any such contacts, however, are merely incidental to the only contact present in this case, *viz.,* the ownership of property within the forum state. At oral argument before this Court, counsel for Riaso stated that he was unaware of any case holding that personal jurisdiction can be asserted over an out-of-state defendant based solely on the ownership of real property in the forum unrelated to the cause of action.[3]

Our conclusion in this case is supported by decisions in other jurisdictions that have held that the presence or owner-

___

copy of the Cappels' deed to this property, which they bought in 1991, is included in the record. The record, however, does not include evidence that the Cappels subsequently sold this property in 1992— approximately fourteen years prior to the execution of the promissory note and personal guarantees leading to this present appeal. Nevertheless, we will exercise our discretion to take notice of the fact that this property was sold in 1992. *See* Rule 5–201; *Dashiell v. Meeks,* 396 Md. 149, 174–76, 913 A.2d 10 (2006). The Cappels' past ownership of this other property, also unrelated to Riaso's claim, does not change our analysis.

3. CJ § 6–103(b)(1) provides for personal jurisdiction over a person who "[t]ransacts any business or performs any character of work or service in the State." This section of the long-arm statute has been interpreted as allowing the exercise of personal jurisdiction to the fullest extent permitted by the Due Process Clause. *Craig v. Gen. Fin. Corp. of Illinois,* 504 F.Supp. 1033, 1038 (D.Md.1980). Notwithstanding that breadth, CJ § 6–103(b)(1) does not support the exercise of personal jurisdiction under the facts of this case because, as noted above, the Due Process Clause does not support the exercise of personal jurisdiction based upon the mere ownership of unrelated real property, and that is, in reality, the sole business transacted in Maryland by the Cappels.

ship of property in the forum state, unrelated to the cause of action, is insufficient to satisfy the minimum contacts required by the Due Process Clause for the exercise of personal jurisdiction. As the Fourth Circuit Court of Appeals explained in *Base Metal Trading, supra,* 283 F.3d at 213:

> [The] basic [Due Process Clause] analysis is not altered when the defendant's property is found in the forum state. The Supreme Court's decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), eliminated all doubt that the minimum contacts standard in *International Shoe* governs *in rem* and *quasi in rem* actions as well as *in personam* actions. *Shaffer,* 433 U.S. at 207–12, 97 S.Ct. 2569. The Court held that "in order to justify an exercise of jurisdiction *in rem,* the basis of jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing." *Id.* at 207, 97 S.Ct. 2569 (internal quotations omitted). And "[t]he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*" *Id.*
>
> Of course, the presence of property in a state may have an impact on the personal jurisdiction inquiry. Indeed, "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Id.* Yet, **when the property which serves as the basis for jurisdiction is completely unrelated to the plaintiff's cause of action, the presence of property alone will not support jurisdiction.** *Id.* at 209, 97 S.Ct. 2569. **While[ ] "the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation," when those "other ties" do not exist, jurisdiction is not reasonable.** *Id.*

(Emphasis added.)

In *Base Metal Trading,* the property allegedly giving rise to personal jurisdiction was 2,563 tons of aluminum the defen-

dant shipped to Maryland. *Id.* at 214. This was the defendant's only contact with the state. The Fourth Circuit determined that this was an insufficient contact on which to base personal jurisdiction, where the contact had no relation to the cause of action. *Id.* Although *Base Metal Trading* concerned a contact based on the presence of personal property, rather than the ownership of real property in the forum state, we do not perceive this to be a material distinction. *See Access Telecom v. MCI Telecommunications Corp.,* 197 F.3d 694, 717 (5th Cir.1999), *cert. denied,* 531 U.S. 917, 121 S.Ct. 275, 292, 148 L.Ed.2d 200 (2000) ("The mere renting or ownership of property in a forum is not enough [to create personal jurisdiction] when that property is not used to conduct business in the forum."); *see also Bryant v. Roblee,* 153 S.W.3d 626, 630–31 (Tex.App.Amarillo 2004) ("Ownership of real property alone does not provide contacts sufficient to establish general jurisdiction over a nonresident corporation."). *Cf. Bowsher v. Digby,* 243 Ark. 799, 422 S.W.2d 671, 676 n. 5 (1968) (declining to answer the "question of whether the ownership of real property in this state is sufficient to confer personal jurisdiction in an action not related to any transaction concerning such real estate" because the action arose from a contract relating to the defendant's ownership of real property in the state); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 38(1) (1971) ("A state has power to exercise judicial jurisdiction over an individual who has owned, used or possessed an immovable thing in the state with respect to any cause of action arising from the thing while it was owned, used or possessed by the individual.").

Nevertheless, Riaso argues that it would be fair and reasonable for the circuit court to exercise personal jurisdiction over the Cappels. In *Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the United States Supreme Court explained that the existence of personal jurisdiction under the Due Process Clause requires a two-part analysis: "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to

determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Accordingly, after a court makes the threshold finding that the required minimum contacts exist, it will proceed to determine whether it would be fair and reasonable to extend personal jurisdiction based on those contacts.

In *Camelback II, supra,* 312 Md. at 341–42, 539 A.2d 1107, the Court of Appeals recognized five factors relevant to this second-step analysis: "the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive policy issues." Riaso argues that these factors are met in the present case.

The Court of Appeals noted in *Camelback II, id.* at 341, 539 A.2d 1107, that, "although it is convenient to speak of the two analyses as separate steps, the 'threshold' step is not considered in a vacuum, nor must it invariably be the first step." Nevertheless, in *CSR, supra,* 411 Md. at 493, 983 A.2d 492, the Court of Appeals clarified that it is unnecessary to discuss the fairness factors where the threshold step is unmet if there are insufficient contacts with the forum. The Court concluded, *id.* at 493, 983 A.2d 492:

> Because we conclude in the foregoing analysis that [defendant] has not, in the course of any of its contacts with Maryland, satisfied the "purposeful availment" requirement, thus attaining sufficient minimum contacts with the State, we need not consider whether the exercise of personal jurisdiction would be constitutionally reasonable as required by our tests for either specific or general jurisdiction. See *Camelback I,* 307 Md. [270,] 286 [ (1986) ], 513 A.2d at 882 (noting that the fairness factors "cannot alone serve as the foundation for assumption of jurisdiction" (citing *World–Wide Volkswagen Corp.,* 444 U.S. at 294, 100 S.Ct. at 565, 62 L.Ed.2d at 499; *Hanson,* 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296)).

Because Riaso has not established that the threshold step of systematic contact has been met, we will not discuss its argument based on the fairness factors.[4]

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY VACATED. COSTS TO BE PAID BY APPELLEE.**

---

4. Riaso has not argued, either in the circuit court or on appeal, that the guarantees' "Governing Law" provision, which states that the guarantees "shall be deemed to be made in and governed by the laws of the State of Maryland," has an effect on the circuit court's exercise of personal jurisdiction. *See* Rule 8–131(a); Rule 8–504(a)(5). In *Lieberman v. Mayavision*, 195 Md.App. 263, 282, 6 A.3d 315 (2010), the defendants argued that a contract's choice of law provision gave them a " 'reasonable belief' that 'they could only be sued' " in the forum specifically named therein. This Court noted that, "[e]ven if the contract did apply, however, 'choice of law analysis ... is distinct from minimum-contacts jurisdictional analysis.' " *Id.* at 284, 6 A.3d 315 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Because Riaso did not argue this issue, we will not discuss it further. *See Anderson v. Litzenberg*, 115 Md.App. 549, 578, 694 A.2d 150 (1997) ("[I]t is not our function to seek out law in support of a party's appellate contentions.").

Finally, we note that Paragraph 7 of the guarantees included a clause in which the Cappels agreed to be sued "in any court of competent jurisdiction in the State of Virginia or any other State or Territory of the United States." By its express terms, Paragraph 7 permitted suit to be filed in either: (1) Virginia; or (2) "any other State or Territory of the United States." There is no Maryland case determining whether jurisdiction is proper in Maryland based on a forum-selection clause which, by its terms, is applicable nationwide and makes no specific reference to Maryland. Another jurisdiction has found a similar clause to be unenforceable as overbroad. *Cent. Ohio Graphics v. Alco Capital Res.*, 221 Ga.App. 434, 472 S.E.2d 2, 3–4 (1996) (determining that the clause "[plaintiff] has the option of pursuing any action under this agreement in any court of competent jurisdiction and the [defendant] consents to jurisdiction in the state of our choice" is "so lacking in specificity" as to render enforcement of it "unreasonable and unjust"). In any event, Riaso has not argued that Paragraph 7 provides an

adequate basis for the State of Maryland to exercise personal jurisdiction over the Cappels. *See* Rule 8–131(a); Rule 8–504(a)(5).